UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COMMISSIONED OFFICERS
ASSOCIATION OF THE UNITED STATES
PUBLIC HEALTH SERVICE,

*Plaintiff,*

v.

LONNIE G. BUNCH, III, in his official
capacity as Secretary of the Smithsonian
Institution, *et al.,*

*Defendants.*

Civil Action No. 21-0853 (JDB)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS</u>**

*CHANNING D. PHILIPS*
Acting United States Attorney

*BRIAN P. HUDAK*
Acting Chief, Civil Division

*DIANA V. VALDIVIA*
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia

July 16, 2021

**<u>TABLE OF CONTENTS</u>**

BACKGROUND………………………………………………………………………..2

    A.     The Native American Veterans' Memorial Establishment Act of 1994……………2

    B.     The Memorial………………………………………………………………………...3

    C.     The Association's Efforts to Change the Memorial Design and the Act…………...4

    D.     The Instant Lawsuit………………………………………………………………...5

STANDARD OF REVIEW……………………………………………………………….5

ARGUMENT……………………………………………………………………………...7

    I.     PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE THE ASSOCIATION LACKS ARTICLE III STANDING……………………………7

        A.  Plaintiff Fails to Establish Organizational Standing…………………………...8

        B.  Plaintiff Fails to Establish Representational Standing…………………………10

    II.    THE ASSOCIATION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED……....................................................................11

        A.  The Association Does Not Plausibly Allege a Substantive Due Process Claim…………………………………………………………………………12

        B.  The Association Does Not Plausibly Allege a Procedural Due Process Claim…………………………………………………………………………13

    III.   PLAINTIFF'S CLAIM IS NONJUSTICIABLE UNDER THE POLITICAL QUESTION DOCTRINE…………………………………………………....15

CONCLUSION………………………………………………………………………..18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abigail All. for Better Access to Developmental Drugs v. Eschenbach*,
    469 F.3d 129 (D.C. Cir. 2006) ................................................................. 9, 10

*Al-Tamimi v. Adelson*,
    916 F.3d 1 (D.C. Cir. 2019) ................................................................. 16, 17

*Ariz. Christian Sch. Tuition Org. v. Winn*,
    563 U.S. 125 (2011) ................................................................................ 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................... 6, 7, 14

*Ass'n of Flight Attendants-CWA*,
    564 F.3d 462 (D.C. Cir. 2009) ................................................................. 10

*Baker v. Carr*,
    369 U.S. 186 (1962) ............................................................................. 16

*Bancoult v. McNamara*,
    445 F.3d 427 (D.C. Cir. 2006) ............................................................. 15, 16

*Bd. of Regents of State Colleges v. Roth*,
    408 U.S. 564 (1972) ............................................................................. 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................... 6, 7, 14

*Center for Law & Educ. v. Dep't of Educ.*,
    396 F.3d 1152 (D.C. Cir. 2005) ............................................................. 8, 11

*Clapper v. Amnesty Int'l*,
    568 U.S. 398 (2013) ............................................................................. 8

*Ctr. for Responsible Sci. v. Gottlieb*,
    346 F. Supp. 3d 29 (D.D.C. 2018) ............................................................. 9

*Doe v. District of Columbia*,
    93 F.3d 861 (D.C. Cir. 1996) ................................................................. 14

*Dominguez v. UAL Corp.*,
    666 F.3d 1359 (D.C. Cir. 2012) ............................................................... 7

*EEOC v. St. Francis Xavier Parochial Sch.*,
    117 F.3d 621 (D.C. Cir. 1997) ................................................................. 7

*Equal Rights Ctr. v. Post Props.*,
    633 F.3d 1136 (D.C. Cir. 2011) ............................................................... 9

*Food & Water Watch, Inc.*,
    808 F.3d 905 (D.C. Cir. 2015) ................................................................. 9

*Friends of Animals v. Ashe*,
    174 F. Supp. 3d 20 (D.D.C. 2016) ........................................................... 10

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ............................................................................. 10

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
    185 F. Supp. 2d 9 (D.D.C. 2001) .............................................................. 6

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ............................................................................. 9

*Herbert v. Nat'l Acad. of Scis.*,
  974 F.2d 192 (D.C. Cir. 1992) ............................................................................ 6
*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
  478 U.S. 221 (1986) ......................................................................................... 15
*Jerome Stevens Pharmaceuticals v. FDA*,
  402 F.3d 1249 (D.C. Cir. 2005) ........................................................................ 6
*Kelley v. D.C.*,
  893 F. Supp. 2d 115 (D.D.C. 2012) ................................................................ 13
*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................. passim
*Mathews v. Eldridge*,
  424 U.S. 319 (1976) .................................................................................. 13, 14
*McManus v. District of Columbia*,
  530 F. Supp. 2d 46 (D.D.C. 2007) .................................................................. 14
*Morrissey v. Brewer*,
  408 U.S. 471 (1972) ......................................................................................... 14
*National Assoc. of Home Builders, et al. v. Environmental Protection Agency*,
  667 F.3d 6 (D.C. Cir. 2011) ........................................................................ 8, 10
*NB ex rel. Peacock v. District of Columbia*,
  794 F.3d 31 (D.C. Cir. 2015) .......................................................................... 12
*Paul v. Davis*,
  424 U.S. 693 (1976) ......................................................................................... 15
*PETA v. USDA ("PETA II")*,
  797 F.3d 1087 (D.C. Cir. 2015) ....................................................................... 9
*Scheuer v. Rhodes*,
  416 U.S. 232 (1974) ........................................................................................... 7
*Sierra Club v. EPA*,
  292 F.3d 895 (D.C. Cir. 2002) .................................................................. 10, 11
*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ......................................................................................... 10
*Town of Castle Rock, Colo. v. Gonzales*,
  545 U.S. 748 (2005) .................................................................................. 12, 13
*U.S. Ecology, Inc. v. Dep't of Interior*,
  231 F.3d 20 (D.C. Cir. 2000) ............................................................................ 6
*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*,
  517 U.S. 544 (1996) ......................................................................................... 10
*Venetian Casino Resort, LLC v. EEOC*,
  409 F.3d 359 (D.C. Cir. 2005) .......................................................................... 6
*Warth v. Seldin*,
  422 U.S. 490 (1975) ........................................................................................... 6
*Washington ("CREW") v. U.S. Office of Special Counsel*,
  480 F. Supp. 3d 118 (D.D.C. 2020) ............................................................. 8, 9
*Wilson v. Libby*,
  535 F.3d 697 (D.C. Cir. 2008) ........................................................................ 15

**Statutes**

10 U.S.C. § 101(a)(4) ................................................................................................ 3, 13

10 U.S.C. § 101(a)(5) ..................................................................................................... 3

20 U.S.C. § 80q .............................................................................................................. 2

Pub. L. No. 103-384 (1994) ........................................................................................... 2

Pub. L. No. 113-70 (2013) ............................................................................................. 2

**Rules**

Fed. R. Civ. P. 12(b)(1) .............................................................................................. 5, 6

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 7

**Other Authorities**

Federal Practice and Procedure § 1350 (2d ed. 1987) ................................................... 6

Maritime Administration Authorization and Enhancement Act of 2019, S. 1439, 116th Cong. §
   117(a) (2019) ............................................................................................................ 5

Plaintiff in this case is the Commissioned Officers Association of the U.S. Public Health Service ("the Association"), a "member-based organization that supports and advocates for the [U.S. Public Health Service's] Commissioned Corps and its active duty, reserve, and retired officers." ECF No. 1 ("Compl.") ¶ 7. The Association brings this action under the Due Process Clause of the U.S. Constitution and asks the Court to compel Defendants (i) Lonnie G. Bunch, III, in his official capacity as Secretary of the Smithsonian Institution ("Smithsonian"); (ii) Machel Monenerkit,[2] in her official capacity as Acting Director of the Smithsonian Institution's National Museum of the American Indian ("NMAI");[3] and (iii) the United States of America (collectively, "Defendants"), to include the seals of both the U.S. Public Health Service ("USPHS") and the National Oceanic Atmospheric Administration ("NOAA") on the National Native American Veterans Memorial (the "Memorial"), despite Plaintiff's admission that the language of the statute creating the Memorial excludes USPHS and NOAA.

The Court should dismiss Plaintiff's Complaint because the Association lacks standing and fails to adequately plead a claim under the Due Process Clause. Moreover, the Court should decline to intervene in this controversy pursuant to the political question doctrine. *First*, the Association cannot maintain this action because it fails to allege facts sufficient to establish either organizational or representational standing. *Second*, the Court should dismiss the Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6) because the Association has not adequately plead either a substantive or procedural due process claim. Plaintiff fails to identify a legitimate

---

[2]     Pursuant to Federal Rule of Civil Procedure 25(d), Acting Director Monenerkit is automatically substituted for her predecessor, former Director Kevin Gover.

[3]     The Complaint does not specify whether the claim raised against the NMAI Director is an official capacity or individual capacity claim. Because the former NMAI Director is not alleged to have taken any actions in a personal or individual capacity, Defendants construe this claim as an official capacity claim.

claim to a protected property interest in support of the former and does not plausibly allege that it was not afforded a reasonable opportunity to be heard by the Smithsonian in support of the latter. *Finally*, under the political question doctrine the Court should decline to review this controversy which revolves around a policy choice and value determination made by a coordinate political department. Accordingly, the Court should grant Defendants' motion and allow Plaintiff to address its grievance in a more appropriate venue—the halls of Congress.

## BACKGROUND

**A.**   **The Native American Veterans' Memorial Establishment Act of 1994**

The Smithsonian's NMAI is a "living memorial to Native Americans and their traditions." *See* 20 U.S.C. § 80q, *et seq*. (statutory provisions establishing the NMAI). The Native American Veterans' Memorial Establishment Act of 1994, as amended ("the Act"), authorizes the NMAI to construct and maintain a National Native American Veterans' Memorial. Pub. L. No. 103-384, § 3(a) (1994) and Pub. L. No. 113-70 (2013), (attached hereto as Exs. A and B). The Act, originally passed in 1994, was amended in 2013 to provide more flexibility for the location and funding sources for the Memorial. *Id*.

The intent of the Act is to honor Native Americans who have served in the Armed Forces of the United States military. Compl. ¶ 15. The language of the Act makes repeated references to "Armed Forces." For example:

- "Congress finds . . . Native Americans across the Nation . . . have a long, proud and distinguished tradition of service in the <u>Armed Forces</u> of the United States." *See* Ex. A at 1 (The Act Section 2 (Findings)) (emphasis added).

- "Native Americans have historically served in the <u>Armed Forces</u> of the United States in numbers which far exceed their representation in the population of the United States." *Id*. (emphasis added).

- "A National Native American Veterans' Memorial would further the purposes of the National Museum of the American Indian by giving all Americans the opportunity to learn of the proud and courageous tradition of service of Native Americans in the Armed Forces of the United States." *Id*. at 2 (emphasis added).

The USPHS and NOAA Commissioned Corps are part of the "uniformed services," *see* 10 U.S.C. § 101(a)(5), but are *not* part of the "armed forces," which are defined to mean only "the Army, Navy, Air Force, Marine Corps, Space Force, and Coast Guard."  10 U.S.C. § 101(a)(4); *see also* Compl. ¶¶ 17-18.  Neither the "uniformed services" nor the USPHS and NOAA are referenced in the Act.  *See generally* Exs. A and B.

**B.     The Memorial**

In planning the Memorial, the NMAI engaged in a two-year process of extensive outreach to consider the views of the Native American veteran population about the Memorial.  Compl. at 17-28.  No one consulted requested that NOAA and USPHS be included.  As Kevin Gover, former Director of NMAI and the Smithsonian's current Under Secretary for Museums and Culture, explained, "[o]ver a 20 month period from October 2015 through June 2017, the Smithsonian consulted with tribal leaders, Native veterans, and others at 35 locations throughout the country, including Hawai'i and Alaska to discuss the Memorial's design and to solicit tribal opinion to guide the meaning, purpose and design of the Memorial. During these consultations, none of the tribal leaders, Native veterans or others who participated requested the inclusion of the NOAA and USPHS commissioned corps in the Memorial design.  Instead, they focused on ways to effectively honor Native members of the Army, Navy, Marine Corps, Air Force and Coast Guard."  Correspondence from Mr. Gover to Col. Currie dated September 10, 2019 (attached

hereto as Exhibit C);[4] *see also* correspondence dated September 28, 2018 (attached hereto as Exhibit D).

The designer of the Memorial is Harvey Pratt, whose concept, *Warriors' Circle of Honor*, was selected for the Memorial.  *See* Compl. ¶ 48; National Native American Veterans Memorial, Smithsonian, https://americanindian.si.edu/visit/washington/nnavm.  The Memorial opened to the public on Veterans Day 2020.  National Native American Veterans Memorial, Smithsonian, https://americanindian.si.edu/visit/washington/nnavm.

**C.      The Association's Efforts to Change the Memorial Design and the Act**

In June 2018, retired Colonel James T. Currie, at the time Executive Director of the Association, first contacted the NMAI and requested that the logo of the USPHS be included in the Memorial.  *See* Ex. D at 1.  The Smithsonian reviewed this issue thoroughly.  The Smithsonian contacted the veteran's advisory committee, consisting of veterans of the five armed services and their family members.  *Id.*  The advisory committee expressed two views: "first, that the service of the commissioned corps of USPHS and NOAA was both honorable and deserving of recognition; and second, that this Memorial is to honor Native veterans of the Armed Forces, and NOAA and USPHS officers do not fall within its scope."  *Id.*  The Smithsonian also "reached back out to many of the Native people who had participated in the earlier consultations to seek their input.  Although these individuals appreciate and respect the contribution of the Native Commissioned Corps members, they, along with the president of the National Congress of American Indians, also a veteran of the armed forces, do not believe that Congress intended this Memorial to provide recognition beyond the armed forces."  Ex. C at 2.

---

[4]      The Court may properly consider Exhibits C and D for purposes of resolving Defendants' arguments pursuant to Rule 12(b)(1), but it may not consider these materials for purposes of resolving Defendants' Rule 12(b)(6) arguments without converting Defendants' Rule 12(b)(6) motion into one for summary judgment.  *See infra* at 5-7.

4

As Plaintiff notes in the Complaint, an effort to amend the Act to include USPHS and NOAA failed in 2019. Compl. ¶ 42 ("Legislation to correct language in the 1994 law was introduced in the Senate during the 116th Congress, but never made it out of committee. Maritime Administration Authorization and Enhancement Act of 2019, S. 1439, 116th Cong. § 117(a) (2019).").

**D.   The Instant Lawsuit**

On March 30, 2021, the Association filed the instant lawsuit against Secretary Bunch, Acting Director Monenerkit, and the United States of America, alleging a violation of Plaintiff's constitutional due process rights. *See generally* Compl. Whether Plaintiff intends to raise a substantive due process claim, a procedural due process claim, or both, is not entirely clear. *Id*. The Complaint alleges that "by denying the USPHS and NOAA seals on [the] Memorial, the Smithsonian and the NMAI committed a Fifth Amendment due process violation," and that because they are veterans "[t]he USPHS and NOAA both have a 'legitimate claim of entitlement' to the Memorial" rising to the level of a constitutionally protected property interest. Compl. ¶¶ 51, 59, 61. Plaintiffs further allege that Defendants failed to "provid[e] any sufficient notice or opportunity to be heard." Compl. ¶ 66.

The Association seeks declaratory and injunctive relief, including: (1) an order compelling Defendants to "take measures sufficient to ensure Defendants include USPHS and NOAA seals on the Memorial;" (2) unspecified equitable relief "to redress past injury and to restrain future injury; and (3) attorney's fees and costs. Compl. at Prayer for Relief.

The Government now moves to dismiss under Rules 12(b)(1) and 12(b)(6).

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims. *See Lujan v. Defenders of Wildlife*,

504 U.S. 555, 561 (1992); *U.S. Ecology, Inc. v. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).

A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional

authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C.

2001).  For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer

scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a

claim." *Id*. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and

Procedure § 1350 (2d ed. 1987) (alteration in original)).  Additionally, unlike when considering a

motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in

deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms. v.

FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *see also Venetian Casino Resort, LLC v. EEOC*, 409

F.3d 359, 366 (D.C. Cir. 2005) ("[G]iven the present posture of this case—a dismissal under Rule

12(b)(1) on ripeness grounds—the court may consider materials outside the pleadings."); *Herbert

v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

The elements of Article III standing are "an indispensable part of the plaintiff's case," and

"each element must be supported in the same way as any other matter on which the plaintiff bears

the burden of proof." *Lujan*, 504 U.S. at 561.  At the pleading stage, a plaintiff's factual allegations

must be more than merely conclusory legal statements to the effect that standing exists or that the

plaintiff was injured.  As the Supreme Court has stated, "[i]t is the responsibility of the complainant

clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the

dispute and the exercise of the court's remedial powers."  *Warth v. Seldin*, 422 U.S. 490, 518

(1975); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (complaint's statement of

the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and a court need not accept as true "'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 557).

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Twombly*, 550 U.S. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," *Twombly*, 550 U.S. at 556 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)), the facts alleged in the Complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 555. In resolving a Rule 12(b)(6) motion, the Court may consider "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## ARGUMENT

### I.    PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE THE ASSOCIATION LACKS ARTICLE III STANDING

The Court should dismiss Plaintiff's claim as the Association lacks Article III standing. "To state a case or controversy under Article III, a plaintiff must establish standing." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133-34 (2011); *see Dominguez v. UAL Corp*., 666 F.3d 1359, 1361 (D.C. Cir. 2012) (standing is a necessary "predicate to any exercise of our jurisdiction"). To establish standing generally, a plaintiff must demonstrate having suffered an

injury-in-fact, specifically an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013). *See Lujan*, 504 U.S. at 560-61.

A plaintiff must meet three requirements to establish standing. First, the plaintiff must have suffered an injury in fact, "an actual or imminent invasion of a legally protected, concrete and particularized interest." *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005) (citing *Lujan*, 504 U.S. at 560-61); *Nat'l Assoc. of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) ("The 'irreducible constitutional minimum of standing contains three elements': (1) injury-in-fact, (2) causation, and (3) redressability."). Second, "there must be a causal connection between the alleged injury and the defendant's conduct at issue." *Id*. That is, the injury must be "'fairly traceable to the challenged action.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). And third, "it must be 'likely,' not 'speculative,' that the court can redress the injury." *Ctr. for Law & Educ.*, 396 F.3d at 1157 (citing *Lujan*, 504 U.S. at 560-61).

An organization seeking to establish standing may "sue either on their own behalf ('organizational standing') or on behalf of their members ('representational standing')." *Citizens for Responsibility & Ethics in Wash. ("CREW") v. U.S. Off. of Special Counsel*, 480 F. Supp. 3d 118, 126-27 (D.D.C. 2020). It is not entirely clear from Plaintiff's Complaint whether the Association seeks to establish organizational or representational standing. *See generally* Compl. One thing is clear—Plaintiff fails to allege facts sufficient to establish either.

### A.      Plaintiff Fails to Establish Organizational Standing

For organizational standing, an organization must allege a "concrete and demonstrable injury to [its] activities." *CREW*, 480 F. Supp. 3d at 127. The organization cannot establish

standing by seeking to "vindicate their own value preferences through the judicial process." *Id*. The D.C. Circuit uses a two-part test to analyze this inquiry: the court asks first "whether the agency's action or omission to act 'injured the [organization's] interest'"; then, if satisfied, it inquires whether "the organization 'used its resources to counteract the harm.'" *PETA v. USDA* ("*PETA II*"), 797 F.3d 1087, 1099 (D.C. Cir. 2015); (alteration in original) (quoting *Equal Rights Ctr. v. Post Props.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011); *accord Food & Water Watch*, 808 F.3d 905, 919 (D.C. Cir. 2015) (employing same test); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (finding organizational injury based on an "injury to the organization's activities" followed by "the consequent drain on the organization's resources"). In reviewing the injury analysis, the government activity must "perceptively impair [] the organization's ability to provide services." *CREW*, 480 F. Supp. 3d at 127. It is not enough that the organization's mission has been compromised. *Id*. at 128 (citing *Abigail All. for Better Access to Dev. Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006)). And not all use of resources will meet the second part of the test. *CREW*, 480 F. Supp. 3d at 128. "[T]he devotion of resources to advocacy for the organization's preferred policy—whether that advocacy is directed at Congress, the courts, or an administrative agency—falls short of the line." *Id*. at 128 (citing, among others, *Ctr. for Responsible Sci. v. Gottlieb*, 346 F. Supp. 3d 29, 37 (D.D.C. 2018)). These are considered "self-inflicted" injuries. *Id*. (citing *Abigail All.*, 469 F.3d at 133).

Here, Plaintiff fails both prongs of the test. Nothing alleged in the Complaint supports the conclusion that the Smithsonian's actions have perceptively impaired the Association's ability to provide services. *See generally* Compl. Rather, if anything, the Association is alleging that its mission is being compromised, *see* Compl. ¶ 7 ("Plaintiff's mission is to . . . support[] and advance[e] the interests of the USPHS"), which is insufficient under this Circuit's case law. *See*

9

*Abigail All.*, 469 F.3d at 133.  The Association also fails to allege that it has invested resources that are not "self-inflicted" to counteract any alleged harm.  *See generally* Compl.  The Association has thus failed to allege facts sufficient to meet either prong of this Circuit's test to establish organizational standing.

      **B.**      **Plaintiff Fails to Establish Representational Standing**

      Any attempt by Plaintiff to establish representational standing fares no better.  "To have representational standing, an organization must show that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of Animals v. Ashe*, 174 F. Supp. 3d 20, 28 (D.D.C. 2016) (citing *Home Builders*, 667 F.3d at 11 (quoting *Ass'n of Flight Attendants-CWA*, 564 F.3d 462, 464 (D.C. Cir. 2009), and *United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996))).  To obtain injunctive relief in particular, as the Association seeks to do, a plaintiff "must show under the first prong of the test that at least one of its members 'is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical'; it 'must be fairly traceable to the challenged action of the defendant'[]—and "it must be likely that a favorable judicial decision will prevent or redress the injury."" *Home Builders*, 667 F.3d at 12–13 (citing *Summers v. Earth Island Inst.,* 555 U.S. 488, 493, (2009) (quoting *Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000))).  While the burden of production to establish standing is more relaxed at the pleading stage than at summary judgment, a plaintiff must nonetheless allege "'general factual allegations of injury resulting from the defendant's conduct.'" *Sierra Club v.*

*EPA,* 292 F.3d 895, 898–99 (D.C. Cir. 2002) (quoting *Lujan,* 504 U.S. at 561 (alteration in *Sierra Club*)).

Again, Plaintiff fails to allege facts sufficient to meet several of the test's prongs. First, Plaintiff fails to allege facts sufficient to demonstrate that its members would have standing to sue in their own right. *See generally* Compl. The Association has not carried its burden because it has neither sufficiently alleged nor persuasively demonstrated any threat of injury in fact to any of its members that is "fairly traceable to" an action of the Smithsonian. To show causation, Plaintiff must demonstrate a connection between the alleged injury and the agency action at issue. *Ctr. for Law & Educ.*, 396 F.3d at 1157 (citing *Defs. of Wildlife,* 504 U.S. at 560–61). Here, the Association takes issue with the language of the Act itself, which specifies that the Memorial is to honor members of the Armed Services. The language of the Act was written by, and is thus an "action of" Congress, not the Smithsonian. The fact that USPHS and NOAA are excluded from the language of the Act is thus an issue (as discussed *infra*) that is properly addressed to Congress, not the Smithsonian. Second, Plaintiff fails to show that it seeks to protect interests that are "germane to the organization's purpose," particularly with respect to its representation of NOAA Commissioned Corps. The Association's alleged connection with the NOAA Commissioned Corps is particularly speculative. *See* Compl. ¶ 8 (alleging simply that Plaintiff "at times" advocates on behalf of NOAA). In sum, the Association fails to meet multiple prongs of the test required to establish representational standing, and its claim should therefore be dismissed.

## II.   THE ASSOCIATION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even the most generous reading of the Complaint fails to allege sufficient facts to plausibly allege that the Defendants violated a constitutionally protected due process right, substantive or procedural. With respect to an alleged substantive due process violation, Plaintiff fails to identify

a constitutionally protected property right to which Plaintiff has a legitimate claim.  With respect to an alleged procedural due process violation, Plaintiff fails to plausibly allege that it lacked an opportunity to be heard.  The Association's due process claim is therefore subject to dismissal under Rule 12(b)(6).

### A.  The Association Does Not Plausibly Allege a Substantive Due Process Claim

Plaintiff fails to plausibly allege a substantive due process claim because Plaintiff does not identify a legitimate claim to a constitutionally protected property interest.  "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.'"  *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015).  "To have a protected property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Entitlements are not created by the Constitution, but rather "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  *Id.*

Here, the only possible source of a due process entitlement identified in the Complaint is the Act.  *See generally* Compl.  Plaintiff claims an entitlement to the Memorial itself[5] under the Act because its members are "veterans."  Compl. ¶ 61.  But by its very provisions, the Act explicitly

---

[5]     Plaintiff's alleged property interest may be better understood as a potential right of representation on the Memorial.  This, however, is not a classic "property" interest that has found protection under the Constitution.  *See Town of Castle Rock*, 545 U.S. at 766 (The right to enforcement of a restraining order "would not, of course, resemble any traditional conception of property.").

excludes Plaintiff from any entitlement to the Memorial as the Association's members fall outside the scope of the Act's coverage. *See* Ex. A. The Act provides its purpose is to give "[a]ll Americans the opportunity to learn of the proud and courageous tradition of service of Native Americans in the Armed Forces of the United States." Ex. A. Plaintiff is not a member of, nor does Plaintiff represent members of, the Armed Forces of the United States. *See* Compl. ¶¶ 17-18 ("The USPHS and the NOAA are traditionally unarmed branches, since their missions do not inherently involve direct combat."); 10 U.S.C. § 101(a)(4), (5) (defining "armed forces" and "uniformed services."). The fact that Plaintiff's members are veterans of an unarmed service is of no moment.

Moreover, the Act authorizes the Smithsonian to construct and maintain the Memorial and authorizes the Smithsonian and the National Congress of American Indians to select its design. Ex. A. The design selected requires approval from the Smithsonian's Board of Regents. *Id*. The Act gives the Smithsonian discretion over the Memorial's design. *Id*. There is nothing in the Act that would suggest a third party such as Plaintiff has an entitlement to dictate the design of the Memorial, an entitlement that would be inherently vague. *See Town of Castle Rock*, 545 U.S. at 763 ("[I]ndeterminacy is not the hallmark of a duty that is mandatory. Nor can someone be safely deemed 'entitled' to something when the identity of the alleged entitlement is vague."). Plaintiff's substantive due process claim thus fails at the first stage of inquiry and should be dismissed.

### B.      The Association Does Not Plausibly Allege a Procedural Due Process Claim

Plaintiff also fails to adequately plead a procedural due process claim. "The Due Process Clause of the Fifth Amendment requires that no person be deprived of his or her property without due process of law." *Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 123–24 (D.D.C. 2012) (citing *Mathews v. Eldridge,* 424 U.S. 319, 332-33 (1976)). "The fundamental requirement of due

process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. (citing *Mathews,* 424 U.S. at 333 (citation omitted)). "The Fifth Amendment only requires that a person receive his or her due process, not every procedural device that he or she may claim or desire." *Id*. (citiation omitted). Furthermore, demonstrating a lack of opportunity to be heard "is an essential element of a procedural due process claim." *Id*. (citing *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 73 (D.D.C. 2007)). A plaintiff must identify the process that was due but denied. *Doe v. District of Columbia,* 93 F.3d 861, 869-70 (D.C. Cir. 1996). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334, (citing *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972)).

In this case, the Association states in a conclusory manner that Defendants failed to "provid[e] any sufficient notice or opportunity to be heard." Compl. ¶ 66. But Plaintiff does not identify the process that was due and denied. The materials attached to Plaintiff's Complaint demonstrate that the exact opposite is true: for two years Defendants traveled across the country and held 35 consultations in 16 states and the District of Columbia seeking feedback from community members on the design of the memorial. *See* Compl. at 19 ("Between October 2015 and June 2017, NMAI director Kevin Gover and museum staff traveled across the country, meeting with Native American veterans, tribal leaders, and community members. During thirty-five consultations held in sixteen states and the District of Columbia, the museum sought feedback and support while sharing plans for the National Native American Veterans Memorial."). Plaintiff's conclusory allegation that it was denied an opportunity to be heard on the question of who should be included on the Memorial is therefore not "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Accordingly, because the Plaintiff does not sufficiently allege

that it was deprived of a meaningful opportunity to be heard, it cannot make out a viable procedural due process claim.  This claim should therefore be dismissed.

Additionally, Plaintiff dedicates multiple paragraphs of the Complaint to the theory that "reputation damage suffered by USPHS and NOAA by the Smithsonian and NMAI" is the source of its alleged procedural due process rights.  Compl. ¶ 65; *see also* Compl. ¶ 64 ("Not including the USPHS and NOAA seals on the Memorial, damages their reputation because it continues to perpetuate these uniformed services as branches that are not "the real military," continuing the stigma that USPHS and NOAA retirees and former members are not veterans."); Compl. ¶¶ 68-69. Not so.  Plaintiff's theory flies in the face of binding Supreme Court precedent holding that "reputation alone, apart from some more tangible interests such as employment" is insufficient "to invoke the procedural protection of the Due Process Clause."  *Paul v. Davis*, 424 U.S. 693, 701 (1976).  Because Plaintiff has identified no legitimate property interest that could serve as a "more tangible interest" to pair with the alleged reputational damage, Plaintiffs fail to state a procedural due process claim upon which relief may be granted.

## III.   PLAINTIFF'S CLAIM IS NONJUSTICIABLE UNDER THE POLITICAL QUESTION DOCTRINE

The Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to the political question doctrine.  The political question doctrine "'excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch.'"  *Wilson v. Libby*, 535 F.3d 697, 704 (D.C. Cir. 2008) (citing *Bancoult v. McNamara,* 445 F.3d 427, 432 (D.C. Cir. 2006) (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc'y,* 478 U.S. 221, 230 (1986))).  The doctrine applies where, "[p]rominent on the surface" of the case is:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable

standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr,* 369 U.S. 186, 217 (1962).   To find a political question, the Court "need only

conclude that one factor is present, not all."   *Bancoult*, 445 F.3d at 432 (internal quotation omitted).

The Court, however, must determine that the factor is "inextricable from the case at bar" before

dismissing the claim as nonjusticiable under the political question doctrine.   *Id*. at 431-33

(quoting *Baker,* 369 U.S. at 217).   "The last four *Baker* factors—the prudential factors—are

closely related in that they are animated by the same principle: as a prudential matter, the Judiciary

should be hesitant to conflict with the other two branches."   *Al-Tamimi v. Adelson*, 916 F.3d 1, 12

(D.C. Cir. 2019) (citing *Baker*, 369 U.S. at 217).

In this case, Plaintiff does not ask the Court to determine the constitutionality of statute.

Plaintiff, rather, asks the Court to weigh in on an inherently political determination:   who

"deserve[s] the profound recognition" of inclusion on a national memorial?   Compl. ¶ 3.   Only

Armed Service members (as Congress clearly dictated)?   Or all veterans—armed and unarmed?

This is a "'hands-off' political question" implicating the third and fourth prudential *Baker* factors,

as resolution of Plaintiff's claim would necessarily implicate as an initial matter policy

determinations such as memorialization, commemoration, recognition, honor, and national

collective memory that are of a kind clearly for nonjudicial discretion.   *See Al-Tamimi v. Adelson*,

916 F.3d 1, 13 (D.C. Cir. 2019) (recognizing a "hands-off" political question based on the four

prudential *Baker* factors).   Additionally, resolution would express a lack of respect due to

Congress, a coordinate branch of government that has already weighed in with a clear voice on

three occasions (in a 1994 statute, a 2013 amendment, and in rejecting a proposed 2019 amendment) to address this very policy determination.

This political question is inextricable from the case at bar because the Court could not rule in Plaintiff's favor without addressing the question: who deserves recognition?  *Cf. Al-Tamimi*, 916 F.3d at 13 (holding a political question extricable where "the court *could* rule in the plaintiffs' favor on all counts without addressing" the political question it had recognized earlier in the opinion).  The Court should therefore decline Plaintiff's invitation to enter the political thicket and come into conflict with Congress on this policy determination by dismissing Plaintiff's Complaint as raising a nonjusticiable political question.  Dismissal of this case does not leave Plaintiff without a remedy for the perceived harm the Association alleges.  If it so chooses, Plaintiff may continue to address its grievance to the appropriate branch of government: Congress.

*       *       *

## CONCLUSION

Defendants present numerous justifications for the dismissal of the Complaint.  In sum, dismissal is warranted under Rule 12(b)(1) as the Association lacks Article III standing and Plaintiff's claim presents a nonjusticiable political question. Moreover, because the Complaint fails to plausibly plead a due process violation (substantive or procedural), dismissal is also warranted under Rule 12(b)(6).

Dated:  July 16, 2021
        Washington, D.C             Respectfully submitted,

                                 CHANNING D. PHILIPS, D.C. Bar No. 415793
                                 Acting United States Attorney

                                 BRIAN P. HUDAK
                                 Acting Chief, Civil Division

                By:       */s/ Diana V. Valdivia*
                                 DIANA V. VALDIVIA
                                 D.C. Bar No. 1006628
                                 Assistant United States Attorney
                                 U.S. Attorney's Office, Civil Division
                                 555 Fourth Street, N.W.
                                 Washington, D.C. 20530
                                 Tel: (202) 252-2554
                                 diana.valdivia@usdoj.gov

                                 *Counsel for Defendants*