**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COMMISSIONED OFFICERS
ASSOCIATION OF THE UNITED STATES
PUBLIC HEALTH SERVICE,

*Plaintiff*                                          Case No. 21-cv-00853 (JDB)

v.

LONNIE G. BUNCH, III, in his official
Capacity as Secretary of the Smithsonian
Institution, *et al.*,

*Defendants*

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

i

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 5

      A.    The USPHS and NOAA ......................................................................... 5

      B.    The Memorial and its Creation ............................................................. 8

      C.    The Relief Sought by the Plaintiffs ...................................................... 9

      D.    The Procedural History of this Matter ................................................. 10

STANDARD OF REVIEW ............................................................................................ 10

ARGUMENT ................................................................................................................. 11

  I.    Plaintiff has standing under Article III of the Constitution. ............................. 11

      A.    Plaintiff has established organizational standing because it has suffered an injury in
fact to its mission of advocating for the status of USPHS and NOAA officers, this injury has
a causal connection to Defendants' actions, and the matter can be redressed through a
favorable decision. ..................................................................................................... 12

      B.    Plaintiff can satisfy representational standing because its members would have had
standing to sue in their own right, the interests they would be seeking to protect are germane
to the organization's purpose, and neither the claim asserted nor the relief requested requires
their individual participation in the lawsuit. ................................................................ 16

  II.    Plaintiff has sufficiently alleged the facts required for relief to be granted under the Due
Process clause of the Fifth Amendment .................................................................. 19

      A.    Plaintiff has sufficiently alleged a procedural due process claim based on reputational
harm by alleging sufficient facts, alongside the facts that the Court can take judicial notice
of, to substantiate that the reputational harm caused by the doubting of the full veterancy of
USPHS and NOAA officers carries with it tangible impacts on their status ...................... 21

      B.    Plaintiff has alleged sufficient facts to substantiate a procedural and substantial due
process claim as the statutory language limiting the Memorial to members of the armed
forces was a drafting error by Congress, meaning that Native USPHS and NOAA members
should have been consulted when planning the Memorial and were entitled to inclusion in
the Memorial. ............................................................................................................ 25

  III.    The political question doctrine does not apply to due process claims. ........................... 29

CONCLUSION ............................................................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

**Constitutions**

U.S. Const. amend. V………………………………………………….………4, 20. 21, 29.

**Cases**

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 557 (2007)……………………...11, 20, 29.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)……………………………...10, 12, 16.

*Warth v. Seldin*, 422 U.S. 490, 518 (1975)………………………………………………...11.

*Touhy v. Regan*, 340 U.S. 462 (1951)……………………………………………………...17.

*Eagle Pharmaceuticals, Inc. v. Azar*, 952 F.3d 323, 332-3 (D.C. Cir. 2020)………...4, 20, 25, 28.

*Food and Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir 2015)……………………12, 15.

*PETA v. USDA ("PETA II")*, 797 F.3d 1087 (D.C. Cir. 2015)……………,,,,,……………12, 14.

*Ralls Corp. v. Commission on Foreign Investment*, 758 F.3d 296 (D.C. Cir. 2014)……..4, 29, 30.

*Equal Rights Ctr. v. Post Props.*, 633 F.3d 1136 (D.C. Cir 2011)…………...………………15.

*Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6 (D.C. Cir 2011)………...…………………17.

*El-Shifa Pharmaceutical Industries Co. v. United States*, 607 F.3d 836 (D.C. Cir. 2010)……..29.

*Abigail Alliance for Better Access to Dev. Drugs v. Von Eschenbach*, 469 F.3d 129 (D.C. Cir. 2006)……………………………………………………………………………………….13.

*Trifax Corporation v. District of Columbia*, 314 F.3d 641 (D.C. Cir. 2003)...……...20, 21, 24, 25.

*Jerome Stevens Pharmaceuticals v. FDA*, 402 F.3d 1249 (D.C. Cir. 2005)…...…………….....10, 11.

*Sierra Club v. EPA,* 292 F.3d 895 (D.C. Cir. 2002)……………………………………………18.

*EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621 (D.C. Cir. 1997)………...11, 20, 21.

*National Treasury Employees Union v. United States*, 101 F.3d 1423 (D.C. Cir 1996)………..13.

*Cutts v.* Fowler, 692 F.2d 138 (D.C. Cir. 1982)……………………………………………...28.

*Citizens for Responsibility & Ethics in Wash. ("CREW") v. U.S. Off. of Special Counsel,* 480 F. Supp. 3d 118 (D.D.C. 2020)………………………...…………………11, 12, 14, 15.

*Ctr. for Responsible Sci v. Gottlieb,* 346 F. Supp. 3d 29 (D.D.C. 2018)…………………………..15.

*Friends of Animals v. Ashe,* 174 F.Supp. 3d 20 (D.D.C. 2016)……………………………………16.

*Nat'l Veterans Legal Servs. Program v. United States DOD*, 2016 U.S. Dist LEXIS 110492
    (D.D.C. August 19, 2016)………………….………………………………………………14.

*Al-Aulaqi v. Panetta*, 35 F.Supp.3d 56 (D.D.C., 2014)……………………………………….....29.

*Verbeck v. U.S.*, 89 Fed. Cl. 47 (Ct. Fed. Cl. 2009)……………………………………………….6.

**Statutes**

5 U.S.C. § 2302……………………………………………………………………………...6.

5 U.S.C. § 8331…………………………………………………...……………………1, 6, 26.

10 U.S.C. § 1034……………………………………………………………………………….6.

38 U.S.C. § 101…………………………………………………………………...………13, 22.

38 U.S.C. § 2402……………………………………………………………………...4, 26.

38 U.S.C. § 4313………………………………………………………………………...………26.

42 U.S.C. § 213……………………………………………………………………………*supra*.

50 U.S.C. § 3911………………………………………………………………...……1, 6, 26.

Native American Veterans Memorial Amendments Act of 2013, 127 Stat. 1208…………...…..8.

Native American Veterans' Memorial Establishment Act of 1994, 108 Stat. 4067………....*supra*.

Minn. Stat. § 197.447 (2021)…………………………………………………………………22.

Minn. Stat. § 197.4551 (2021)…………………………………………...………………22.

N.D. Cent. Code 37-19.1-05……………………………………………………………………22.

Va. Code Ann. § 40.1-27.2 (2021)…………………………………………………………22.

Va. Code Ann. § 2.2-2903………………………………………………………...………..22.

**Rules**

Federal Rule of Civil Procedure 12……………………………...……………………......10, 19, 21, 29, 30.

**Administrative Publications**

Sara Hylton, *Veterans in the Labor Force: 6 Stats*, U.S. DEPARTMENT OF LABOR BLOG (November 9, 2021)…………………………………………//…………………4, 21.

USPHS, *USPHS Commissioned Corps Demographics*, USPHS.gov (September 25, 2020)...7, 27.

COMMISSIONED CORPS OF THE U.S. PUBLIC HEALTH SERVICE, *Separations*, DCP.PSC.gov (last accessed January 22, 2022)……………………………………………………...23.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *Trump Administration Re-Establishes Ready Reserve Corps as Part of the United States Public Health Service,* HHS.gov (June 30, 2020)…………………………………………………………….…*supra.*

Memorandum for Acting Assistant Secretary of Health and Human Services for Health from Acting Under Secretary of Defense Paul Levine (May 24, 2016)………………………23.

GOVERNMENT ACCOUNTABILITY OFFICE, *Comptroller General Advisory Opinion B-204126* (1981)…………………………………………………………………...……….24.

**Court Filings**

Plaintiff's Complaint…………………………………...……...…………………………...2, 9, 20.

Defendants' Motion to Dismiss…………………………………...…………………………*supra*.

**Other Publications**

Dan Diamond, *Nation's public health service, deploying to fight covid-19, waits on vaccines*, WASHINGTON POST (February 13, 2021)…………………………………………..2, 3, 24.

COAUSPHS, *Mission and History,* COAUSPHS.ORG (last accessed January 23, 2022)………13.

James T. Currie, *We Lost*, COA FRONTLINE (November 2019)………………………………...15.

J.D. Simkins and Claire Barrett, *A 'Warrior Tradition': Why Native Americans continue fighting for the same government that tried to wipe them out*, MILITARY TIMES (November 19, 2019)……………………………………………………………………………27.

Amanda Barroso, *The changing profile of the U.S. military: Smaller in size, more diverse, more women in leadership*, PEWRESEARCH.ORG (September 10, 2019)……………………6, 26.

Tony Lombardo, *In a First, Public Health Officers Receive DOD Humanitarian Medal*, MILITARY.com, (November 29, 2018)…………………………………………………7.

Megan Hammons, *NOAA, USPHS Veterans Now Eligible for Free VA Photo ID Cards*, VETERANAID.ORG (July 10, 2018)………………………………………………3, 23.

Krueger et al., *What Veterans Bring to Civilian Workplaces*, RAND CORPORATION (2017)…..22.

Rear Admiral Boris Lushniak, *Update on the U.S. Public Health Response to the Ebola Outbreak*, reprinted in PUBLIC HEALTH REPORTS, Volume 130(2), Mar-Apr. 2015…..…5.

# **INTRODUCTION**

On March 30, 2021, Plaintiff Commissioned Officers Association of the U.S. Public Health Service ("Plaintiff") filed suit under the Due Process clause of the Fifth Amendment of the U.S. Constitution to compel Defendants Lonnie G. Bunch, III, in his official capacity as the Secretary of the Smithsonian Institution, Machel Monenerkit, in her official capacity as the Acting Director of the Smithsonian Institution's National Museum of the American Indian ("NMAI"), and the United States of America ("Defendants") to include the seals of both the U.S. Public Health Service ("USPHS") and the National Oceanic Atmospheric Administration ("NOAA") on the National Native American Veterans Memorial (the "Memorial").

The USPHS and NOAA stand alongside the six armed forces to form the eight uniformed services, who all proudly wear their country's uniform, are deployed in service to their nation, and, under statute, are considered to be veterans and entitled to all the benefits of veterancy. USPHS service members have been deployed by their country across the globe, in every major conflict and peacetime operation this country has faced, nearly 900 commissioned officers serving in Iraq and 4,500 being deployed to fight the COVID-19 pandemic. U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *Trump Administration Re-Establishes Ready Reserve Corps as Part of the United States Public Health Service,* HHS.gov (June 30, 2020).[1] In fact, both the USPHS and NOAA were specifically uniformed to ensure that they were protected under the laws of war. Yet, despite being veterans on paper, their service is often forgotten or denigrated. Even the institutions tasked with providing them the benefits they are due as veterans forget that they serve all eight of the uniformed services, not just the six armed forces. This has extended to

---

[1]

https://web.archive.org/web/20210114174756/https://www.hhs.gov/about/news/2020/06/30/trump-administration-re-establishes-ready-reserve-corps-as-part-of-the-us-phs.html

military healthcare facilities denying COVID vaccines to USPHS officers, on the grounds that they weren't "military", even as they were deployed on what is statutorily defined as military service, risking their lives fighting the pandemic. 5 U.S.C.§ 8331(13)(b); 42 U.S.C. § 213; 50 U.S.C. § 3911(2)(B); Dan Diamond, *Nation's public health service, deploying to fight covid-19, waits on vaccines*, WASHINGTON POST (February 13, 2021).[2] They are also denied most of the societal benefits given to veterans, thanks to the perception of them not being "real" veterans.

Defendants, through completely failing to consult Native USPHS and NOAA veterans, and failing to include their seals on the Memorial, have helped propagate this societal denigration of the honorable service, and rightfully earned veteran status, of USPHS and NOAA veterans. Congress clearly intended for the Memorial to be a memorial to *all* Native veterans, and by excluding those two branches, Defendants teach the public that the USPHS and NOAA are not "real" veterans. *See* Native American Veterans' Memorial Establishment Act of 1994, 108 Stat. 4067 at § 2(6).

In order to end this harm, Plaintiff's filed suit under the Fifth Amendment's Due Process Clause, alleging that Defendants did not grant sufficient procedural due process before inflicting this reputational harm, a harm which carries with it clear tangible impacts. *See* Complaint at ¶¶ 63, 64, 67. In addition, Plaintiff alleges that Defendants did not grant them sufficient procedural due process through Defendants' failure to consult USPHS and NOAA veterans when designing the Memorial, and also engaged in a substantial due process violation by failing to include the emblems of the two branches on the Memorial. *Id.* at ¶ 61-2. Defendants now seek to move to dismiss Plaintiff's complaint on the grounds that Plaintiff lacks standing and has not sufficiently alleged the facts required to establish the due process violations. *See generally* Defendants'

---

[2] https://www.washingtonpost.com/health/2021/02/13/covid-vaccines-public-health-service/

Motion to Dismiss. They claim that Native USPHS veterans, and Plaintiff, had no statutory right to be consulted on, or included in, the Memorial, and that Plaintiff has not alleged a tangible impact of the claimed reputational harm. *Id.* at 1-2. In addition, Defendants claim that this action is barred by the political questions doctrine. *Id.*

First, Plaintiff has both organizational and representational standing. It has suffered an injury in fact to its mission of advocating for the veteran status of USPHS and NOAA service members, this injury has a causal connection to Defendants actions and was incurred as a result of correcting the damage caused by Defendant, and it can be redressed through a favorable decision. This satisfies the requirements for organizational standing. In addition, its Native members would have standing to sue in their own right, this suit is germane to the Plaintiff's interests, and it does not require their individual participation. This satisfies the requirements for representational standing.

Second, Plaintiff has alleged sufficient facts, including through facts this Court may take judicial notice of, to establish that the reputational harm caused by the denial of the veteran status due to USPHS and NOAA veterans carries with it substantial tangible impacts. This includes the denial of COVID vaccinations, as illustrated above, even when USPHS service members were on the frontlines of the pandemic, difficulties in obtaining veteran's benefits due to ignorance as to their status, and the denial of wider societal benefits. *See*, Diamond, *supra*.; *see* Megan Hammons, *NOAA, USPHS Veterans Now Eligible for Free VA Photo ID Cards*, VETERANAID.ORG (July 10, 2018).[3] This is particularly salient for Native USPHS veterans, as ethnic minority groups see a particularly stark difference in employment between veterans and non-veterans, meaning that societal ignorance or denial as to their veteran status carries clear

---

[3] https://www.veteranaid.org/blog/noaa-usphs-veterans-now-eligible-for-free-va-photo-id-cards/

consequences for both employment and promotion. *See* Sara Hylton, *Veterans in the Labor Force: 6 Stats*, U.S. DEPARTMENT OF LABOR BLOG (November 9, 2021).[4] In addition, Congress' intent is determined as of the enacting of the 1994 and 2012 bills authorizing, and modifying the authorization, of the Monument. This intent, when combined with the wider grant of veterans benefits to USPHS and NOAA officers when Congress is prompted, reveals that the absence of the uniformed services was a drafting error as a matter of historical fact. *See Eagle Pharmaceuticals, Inc. v. Azar*, 952 F.3d 323, 332-3 (D.C. Cir. 2020); *see, e.g.,* 42 U.S.C. § 213(d). Congress often forgets the uniformed services, but invariably extends the benefits of veterancy, including memorialization, such as through burial in Arlington Cemetery, when reminded. *Id*; 38 U.S.C.§ 2402. The statutory language limiting the Memorial for *all* Native veterans to only the armed forces was thus a clear drafting error driven by a forgetting of the other two uniformed services, not a conscious choice. *See* 108 Stat. 4067 at § 2(6). This grants Native USPHS and NOAA veterans both the procedural right to be consulted on the Memorial, which did not occur, and the substantive right to be included in the Memorial, which also did not occur. Denial of both without sufficient due process is thus a violation of the Due Process clause. Const. amend. V.

    Third, the political question doctrine does not apply to due process claims, even when the most important policy questions are at stake, because interpretation of the constitution is firmly within the scope of the powers allocated to the Judiciary. *See Ralls Corp. v. Commission on Foreign Investment*, 758 F.3d 296, 314 (D.C. Cir. 2014).

---

[4] https://blog.dol.gov/2021/11/9/veterans-in-the-labor-force-6-stats#chart4

# BACKGROUND

### A.    The USPHS and NOAA

The USPHS and the commissioned officers of NOAA are uniformed services subject to full militarization during times of war. 42 U.S.C. § 213. The USPHS, in particular, has been providing medical services to the Coast Guard for more than two centuries, wearing the Coast Guard's uniforms and serving on cutters and at shore stations. USPHS and NOAA members are all commissioned officers and are deployed at home and abroad in operations during times of both peace and war. Exhibit 1, September 19, 2018, Letter from the Military Coalition. In fact, NOAA was transformed into a unformed service in order to ensure that NOAA officers serving their nation in warzones received the protections offered to enemy combatants under the laws of war. Both branches have made significant contributions and sacrifices while serving their nation, including deaths while on deployment, and USPHS and NOAA officers have been awarded Distinguished Service Medals, Legions of Merit, Purple Hearts, and Bronze Stars. *Id.* The USPHS, in particular, has been deployed into crisis zones to help fight pandemics both abroad, during the 2014-2015 Ebola Pandemic, and at home, during the Covid Pandemic. *See* U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *Trump Administration Re-Establishes Ready Reserve Corps*, *supra*; *see* Rear Admiral Boris Lushniak, *Update on the U.S. Public Health Response to the Ebola Outbreak*, reprinted in PUBLIC HEALTH REPORTS, Volume 130(2), Mar-Apr. 2015 at 118-120.[5]

Yet, the path to ensuring that the USPHS and NOAA are treated under the law in accordance with their status as servicemembers has been a long and winding one. In comparison to the six armed forces, the USPHS and NOAA are very small, numbering just under 7,000

---

[5] Accessible at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4315850/#.

commissioned officers when combined (6,500 in the USPHS and 321 in NOAA). This means that the distinction between the category of the armed forces (the Army, Navy, Air Force, Space Force, Coast Guard, and Marine Corps) and the wider category of the uniformed services (adding both the USPHS and NOAA commissioned officers) is tiny, with the armed forces accounting for 1.346 million of the 1.353 million total for the uniformed services. *See* Amanda Barroso, *The changing profile of the U.S. military: Smaller in size, more diverse, more women in leadership*, PEWRESEARCH.ORG (September 10, 2019).[6]

Congress, and the federal agencies administering veterans benefits, often thus forget about the USPHS and NOAA. Organizations like the Plaintiff here, who represents the officers of the USPHS and frequently advocates on behalf of the officers of NOAA, are thus forced to constantly engage with Congress to ensure that USPHS and NOAA officers receive the benefits they are due as veterans. USPHS and NOAA officers now receive the full scope of benefits administered by the Veterans Affairs Administration (the "VA"), are considered to be service members under law, and their service is statutorily defined as military service. 5 U.S.C. § 8331(13)(b); 42 U.S.C. § 213; 50 U.S.C. § 3911(2)(B). Yet, this is a long path and Congress can often forget that its own prior decisions as to the status of the USPHS and NOAA. This has, for example, left USPHS officers in an unintended gap where they are not eligible for the whistleblower protection offered to Federal employees under 5 U.S.C. § 2302, while also not being covered by the military whistleblower protection statutes for members of the armed forces under 10 U.S.C. § 1034. *See Verbeck v. U.S.*, 89 Fed. Cl. 47, 61-2 (Ct. Fed. Cl. 2009). This struggle is even harder when it comes to the wider society, and Plaintiff is forced to ceaselessly

---

[6] https://www.pewresearch.org/fact-tank/2019/09/10/the-changing-profile-of-the-u-s-military/.

advocate on behalf of its members to educate the public as to the fact that the USPHS and

NOAA engage in military service when deployed and are veterans.

This erasure is a particularly biting wound today given the large contributions of both

services in recent deployments. Nearly 900 USPHS and NOAA officers have been deployed to

Iraq and Afghanistan, 1,400 USPHS officers were deployed to respond to the 2017 Hurricanes,

and more than 4,500 USPHS officers were deployed in response to the COVID-19 pandemic.

*See* Complaint Exhibit 1; *see* Tony Lombardo, *In a First, Public Health Officers Receive DOD*

*Humanitarian Medal*, MILITARY.COM, (November 29, 2018)[7]; U.S. DEPARTMENT OF HEALTH

AND HUMAN SERVICES, *Trump Administration Re-Establishes Ready Reserve* Corps, *supra*. The

deployment to fight COVID-19 is particularly personal for Native USPHS officers, as the

USPHS contributes a great deal to the healthcare services on Native reservations, has a high

percentage of Native service members (6% vs. a Native American population proportion of

1.4%) and the pandemic ravaged Native populations. USPHS, *USPHS Commissioned Corps*

*Demographics*, USPHS.gov (September 25, 2020).[8] At the moment when the pandemic was at

its most dangerous, USPHS officers were deployed to the frontline of its worst crisis zones,

sacrificing for their country to fight against it. Yet, as a sign of how ignorance as to their service

harms USPHS and NOAA officers, they were forced to do so while denied early vaccination

status, as military healthcare organizations were often unaware that USPHS officers qualified for

vaccination under military priority. *See* Diamond, *supra*. Despite this frequent wrongful denial of

the potentially lifesaving protection USPHS officers needed while on the frontlines of the fight

against the virus, they still did their duty to their county on deployment.

---

[7] https://www.military.com/daily-news/2018/11/29/first-public-health-officers-receive-dod-humanitarian-medal.html.
[8] https://www.usphs.gov/news/usphs-commissioned-corps-demographics.

### B.       The Memorial and its Creation

The Memorial was first authorized in 1994 by the Native American Veterans' Memorial Establishment Act of 1994. 108 Stat. 4067 (1994). Congress granted permission for the Memorial in part out of recognition of the disproportionate rate of service by Native Americans. 108 Stat. 4067 § 2(2). The statutory goal was for the Memorial to serve as a Memorial for *all* Native veterans. *Id.* at synopsis, §§ 1, 2(6). Yet, as highlighted above, Congress often forgets about the uniformed services and made the error of writing "armed forces" within the statute itself. *Id.* at § 2(7). This drafting error was in clear contradiction to the findings and intent of the statute. *See id.* at §§ 1, 2(6).

The Memorial, just like the National Museum of the American Indian, took a long time to come to fruition. In 2013, minor changes were made to the authorizing statute which permitted federal funding for the Memorial. Native American Veterans Memorial Amendments Act of 2013, 127 Stat. 1208. The Smithsonian, in the late 2010's, finally began the process of designing and building the Memorial. It rapidly became apparent that Congress' drafting error in using the language of the armed forces, instead of the uniformed services, had filtered down to the Smithsonian. The Smithsonian, in its own documentation, stated that the Memorial "must be inclusive, honoring *all* Native American veterans… from all eras and branches of service." Complaint Exhibit 2, Smithsonian National Museum of the American Indian, *Consultation Report* at 7. Yet, it limited its consultation purely to veterans of the armed forces, and never once consulted any USPHS or NOAA veterans. *See* Defendants Motion to Dismiss at 3-4.

This became clear when the Smithsonian announced the approval of the design for the monument in June of 2018, which excluded the logos of the USPHS and NOAA. Plaintiff immediately sought to intervene to ensure the proper representation of the USPHS and NOAA on the Memorial. The failure to include those branches on a Memorial intended by Congress to

8

be for *all* Native veterans would not only further spread the common, but wrong, impression that USPHS and NOAA officers aren't veterans, but would also be contradictory to Congress' intent. On September 19, 2018, Plaintiff's efforts were joined by the Military Coalition, a group of more than 35 organizations collectively representing more than 5.5 million current and former service members, veterans, and their families and survivors. *See* Complaint Exhibit 1. The leader of each of these organizations signed on to a letter to Congress recommending that the USPHS and NOAA be included in the Memorial. *Id.* On September 28, 2018, the Smithsonian, in a letter to the Plaintiff, announced that it had returned to its veterans advisory committee (which contained no members of the USPHS or NOAA) and the committee had found that the USPHS and NOAA did not fall within the scope of the Memorial. A Memorial, it must be reminded to the Court, intended by Congress to remember *all* Native veterans. *See* Motion to Dismiss Exhibit D, Letter from Kevin Gover to Col. James T. Currie dated September 28, 2018. Even a letter by former Health and Human Services Secretary Alexander Azar, dated April 9, 2019, was insufficient to change the Smithsonian's mind. *See* Complaint Exhibit 3, Letter from Alexander Azar to David J. Skorton dated April 9, 2019.

> ### C.      The Relief Sought by the Plaintiffs

The relief sought by the Plaintiffs is a minor change to the Memorial. The Memorial currently contains the emblems of five of the sixth armed forces (excluding the Space Force) and has substantial space remaining to include more. *See* Complaint Exhibit 4, Picture of the Memorial. Right now, the absence of the emblems of the USPHS and NOAA teach visitors that USPHS and NOAA veterans are not "real" veterans. To redress this, Plaintiff asks that the emblem for both services be added in the significant remaining space. *See* Complaint at 10. Plaintiff has offered to cover the costs of the modification of the Memorial, which was estimated

by Defendants in previous discussions to be $20,000. Nor is the Memorial likely to remain unchanged moving forward, either. It is currently missing the emblem of the Space Force, an armed service, which will likely have to be included in the future. *See* Exhibit 4. Despite the offer by the Plaintiff to cover the costs, the pleas by organizations representing *5.5 million* service members from all branches of the uniformed services, a letter by the former Health and Human Services Secretary attesting to the USPHS' service, and the minor change involved, Defendants refused to act. *See* Exhibits 1, 3, 4.

    **D.**     **The Procedural History of this Matter**

With Defendants having refused to act, Plaintiff filed suit on March 30, 2021, for injunctive relief pursuant to the Declaratory Judgments and the Due Process Clause of the Fifth Amendment. *See* Complaint. On July 16, 2021, Defendants filed a motion to dismiss the matter under Federal Rule of Civil Procedure 12(b)(1), lack of subject matter jurisdiction and 12(b)(6), failure to state a claim upon which relief may be granted. *See* Defendants Motion to Dismiss. Under 12(b)(1) they allege that this matter must be dismissed because this Court lacks jurisdiction to hear this matter, on the grounds that Plaintiff lacked standing to file suit and that this matter is nonjusticiable under the political questions doctrine. *Id.* Under 12(b)(6) they alleged that Plaintiff had not stated facts sufficient to establish a claim upon which relief may be granted under the Due Process clause of the Fifth Amendment. *Id.*

## STANDARD OF REVIEW

As Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(1), Plaintiff bears the burden of providing that this Court has subject matter jurisdiction over its claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). When ruling on a motion under 12(b)(1) a Court may consider materials outside the pleadings. *Jerome Stevens*

*Pharmaceuticals v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). When determining if Plaintiff

has sufficiently alleged enough facts to establish standing, the factual allegations, though not the

legal conclusions, within the complaint must be accepted as true. *Bell Atlantic Corporation v.*

*Twombly*, 550 U.S. 544, 557 (2007). If Plaintiff is found by this Court to have offered sufficient

factual allegations within its to demonstrate that it has suffered a cognizable injury and that it has

standing to file suit, then Plaintiff must be held to have established that it has standing under

Article III. *See Warth v. Seldin*, 422 U.S. 490, 518 (1975). Plaintiff will survive a motion to

dismiss under the grounds of F.R.C.P. 12(b)(6), for failure to state a claim upon which relief can

be granted, when it has alleged sufficient facts to raise a right of relief which is beyond merely

speculative. *Twombly*, 550 U.S. at 556. Plaintiff's chances of recovery can be "very remote and

unlikely," as long as they are not merely speculative. *Id.* When resolving a 12(b)(6) motion, the

Court is limited to the facts alleged in the complaint, any exhibits attached or incorporated in the

complaint, and matters which the Court may take judicial notice of. *EEOC v. St. Francis Xavier*

*Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## <u>ARGUMENT</u>

I.      **Plaintiff has standing under Article III of the Constitution.**

        In order for this Court to have jurisdiction to hear this suit, Plaintiff must have standing

under Article III of the Constitution. An organization can establish standing through either

organizational *or* representational Article III standing. *Citizens for Responsibility & Ethics in*

*Wash. ("CREW") v. U.S. Off. of Special Counsel,* 480 F. Supp. 3d 118, 126 (D.D.C. 2020).

**A.      Plaintiff has established organizational standing because it has suffered an injury in fact to its mission of advocating for the status of USPHS and NOAA officers, this injury has a causal connection to Defendants' actions, and the matter can be redressed through a favorable decision.**

In order to establish organizational standing, Plaintiff must have suffered an injury in fact, which has a causal connection to Defendants' actions, and which can be redressed through a favorable decision. *Lujan*, 504 U.S. 560-1.

  **i.  Injury in fact.**

Under the theory of organizational standing, an organization first "must have suffered an 'injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized. . . and (b) 'actual or imminent, not 'conjectural' or hypothetical." *Id.* at 560. To satisfy this particular element (the "injury-in-fact" requirement), the "organization must allege a "concrete and demonstrable injury to [its] activities." *CREW,* 480 F. Supp. 3d at 127 (*quoting Food and Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir 2015)). In order to demonstrate this type of injury, it must satisfy a two-prong test that asks: "whether the agency's action or omission to act 'injured the [organization's] interest.'" *PETA v. USDA ("PETA II")*, 797 F.3d 1087, 1094 (D.C. Cir. 2015) (citations omitted). If this prong is satisfied, then the next prong asks if "the organization 'used its resources to counteract that harm.'" *Id* (citations omitted).

  **a.  Plaintiff suffered an injury because its ability to advocate for the veteran status of its members was perceptibly impaired.**

The first prong is satisfied when "the challenged activity must 'perceptibly impair the organization's ability to provide services.'" *Food & Water Watch,* 808 F.3d at 919. Here, the Defendants alleges that Plaintiff fails this prong under the auspices of *National Treasury Employees. Union v. United States*, where the D.C. Circuit held that "Frustration of an

organization's objectives 'is the type of abstract concern that does not impart standing." *National Treasury Employees Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir 1996). However, Defendants neglects the fact that the D.C. Circuit held in *National Treasury* that there is injury where there is "direct conflict between the Defendants' conduct and the organization's mission." *Abigail Alliance for Better Access to Dev. Drugs v. Von Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006) (*citing National Treasury*, 101 F.3d at 1430).

Plaintiff's mission "is to protect and enhance the public health and safety of the United States by supporting and advancing the interests of the Commissioned Corps and its officers." COAUSPHS, *Mission and History,* COAUSPHS.ORG (last accessed January 23, 2022).[9] The key element of this mission is its constant advocacy to ensure that both USPHS and NOAA officers are given proper societal consideration of their status as veterans. This includes advocating to have laws and regulations passed to correct statutory language that excludes both the USPHS and NOAA from receiving parity with the armed forces, at both the state and federal level.

Here, Plaintiff's mission is clearly in direct conflict with Defendants' conduct and has been harmed by said conduct. By law, all members of the USPHS and NOAA are veterans, including when it comes to accessing the veterans benefits offered by the VA. *See* 42 U.S.C. § 213(d) (USPHS); *see also* 38 U.S.C. § 101(21)(c), (24)(a). The Memorial is the National Native American *Veterans* Memorial, not the National Native American *Veterans of the Armed Forces* Memorial. *See* 108 Stat. 4067. The lack of the USPHS and NOAA on the Memorial teaches visitors, especially lawmakers, to believe that the members of these branches of services, past, present, and future, are not veterans. This places the NMAI's conduct in clear conflict with Plaintiff's mission and clearly undermines "the organization's ability to perform its fundamental

---

[9] *https://coausphs.org/page/Mission_and_History*

programmatic services." *CREW*, 480 F. Supp 3d at 131; *Nat'l Veterans Legal Servs. Program v. United States DOD*, 2016 U.S. Dist LEXIS 110492 at *6 (D.D.C. August 19, 2016).

The perception that members of USPHS and NOAA aren't veterans is exemplified by the Defendants' own conduct. In their Motion to Dismiss they state that they conducted an "extensive outreach to consider the views of the Native American population about the Memorial." Defendants' Motion to Dismiss at 3. This outreach also included interviews with a significant number of Native veterans, as well as a "veterans advisory committee" which, as Defendants itself admits, was restricted solely to veterans of the armed forces. *Id.* at 3-4. None of those interviewed or consulted requested inclusion of the USPHS and NOAA, which is unsurprising given that Defendants' belief as to who qualifies as a veteran clearly excludes former USPHS and NOOA service members, and they appear to have limited who they interviewed accordingly. *Id.* Defendants cannot claim to have engaged in inclusive consultations with veterans while excluding the very groups whose veteran status is constantly ignored and who are seeking to have it be recognized. In support of their position, they cite the president of the National Congress of American Indians as stating that the Memorial was intended to be limited to solely veterans of the armed forces. Defendants Motion to Dismiss at 4. Then why would Congress name it the *Veterans* Memorial, if it was intended to be limited to only a restricted class of veterans? *See* 108 Stat. 4067. Even when trying to argue that Plaintiff lacks standing, Defendants still cannot help but reveal how their conduct is in direct conflict, and harms, Plaintiff's educational mission.

          **b.**    **Plaintiff had to expend resources to redress the injury in fact caused by Defendants' conduct.**

The second prong of the "injury-in-fact" element asks whether the organization expended resources to "counteract. . . harm" *PETA II*, 797 F. Supp. 3d at 1094. Before this suit was filed,

Plaintiff had to spend considerable amounts of time and money in advocacy to correct the message being broadcasted by the Memorial. From June 2018 onwards, Plaintiff has sent no less than forty-three letters to multiple entities, including Defendant, news media outlets, Congress, and the Commission of Fine Arts. James T. Currie, *We Lost*, COA FRONTLINE (November 2019) at 1, 12-3.

A counterargument used by the Defendants is that these expenditures are "self-inflicted." "Self-inflicted" expenditures are defined as a combination of items, including "the devotion of resources to advocacy for the organization's preferred policy — whether that advocacy is directed at Congress, the courts, or an administrative agency . . .", and "resources spent on, or in anticipation of, litigation . . ." *Ctr. for Responsible Sci v. Gottlieb,* 346 F. Supp. 3d 29, 47 (D.D.C. 2018); *Food and Water Watch*, 808 F.3d at 919. However, Defendants fails to consider that Plaintiff's expenses were made to counteract the effect of Defendants' conduct, resulting in them sufficing for Article III purposes. *Equal Rights Ctr. v. Post Props.,* 633 F.3d 1136, 1140 (D.C. Cir 2011); *CREW*, 480 F. Supp. 3d at 128. Plaintiff's expenses were purely due to Defendants' active spreading of wrongful impressions as to the veteran status of USPHS and NOAA, as well as their denial of the due process rights of Native USPHS and NOAA service members and veterans.

In short, Defendants' conduct was in direct conflict with Plaintiff's mission, and harmed said mission. Plaintiff, in response, was forced to expend resources to counteract the effect of Defendants' conduct. Plaintiff has thus met both prongs required to satisfy the injury in fact element of organizational standing.

ii.   **There is a clear causal connection between Defendants' conduct and Plaintiff's injury in fact.**

The second element of organizational standing requires the injury in fact to be fairly traceable to the challenged action, instead of being the result of independent action by a third party not before the court. *Lujan*, 504 U.S. at 560. This element is not in controversy here, as Plaintiff has clearly alleged that its injury in fact stemmed from Defendants' conduct and Defendants has not attempted to claim otherwise.

### iii. Plaintiff's injury in fact can be clearly redressed by a favorable decision.

The third and final element requires that "it must be 'likely,' as opposed to merely 'speculative', that the injury will be 'redressed by a favorable decision'". *Id.* at 561. Here, Plaintiff's injuries stem from the lack of the seals of the USPHS and NOAA on the monument and it seeks for said seals to be added to the Memorial. It has offered to the Defendants to cover the fabrication and installation at their cost. Its injury can thus be clearly redressed by a favorable decision ordering the seals to be added, which would result in the monument no longer teaching its visitors that USPHS and NOAA service members are not veterans.

### B. Plaintiff can satisfy representational standing because its members would have had standing to sue in their own right, the interests they would be seeking to protect are germane to the organization's purpose, and neither the claim asserted, nor the relief requested, requires their individual participation in the lawsuit.

Defendants also raises the issue that COAUSPHS lacks representational standing, the second of two tests to establish Article III standing. Similar to organizational standing, representational standing includes three elements. First, the organization "must show that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of Animals v. Ashe,* 174 F.Supp. 3d 20, 28 (D.D.C. 2016) (citations omitted).

Plaintiff's complaint asks for injunctive relief. In order to obtain this relief, Plaintiff "must show under the first prong of the test that at least one of its members 'is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural and hypothetical'; it 'must be fairly traceable to the challenges action of the defendant—and "it must be likely favorable judicial decision will present or redress injury.'" *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12 (D.C. Cir 2011).

### i.     Members would otherwise have standing to sue in their own right.

The members of COAUSPHS comprise mostly of active, retired, and former members of the USPHS. Additionally, since NOAA does not have an organization like COAUSPHS that advocates for their benefit, often time COAUSPHS argues on behalf of NOAA, since both USPHS and NOAA are inherently "unarmed" services and often times suffer the same lack of benefits that the armed forces have due to the "veteran" interpretation. There are former and retired COAUSPHS members that could sue Defendants under their own right. Active members would be subject to a *Touhy* request from their respective agency, but, notwithstanding, individual members could potentially sue Defendants in their own capacity. See generally *Touhy v. Regan*, 340 U.S. 462 (1951).

### a.     Injunctive relief prong

As for satisfying the *Home Builders* prong for injunctive relief, COAUSPHS has identified two active members, one from USPHS and the other from NOAA, subject to *Touhy*, that are willing to join as parties-in-interest to the present litigation. While these individuals were not identified at the time of the complaint, both of these individuals, and those like them, have stated that the threat of not having their service recognized on the Memorial fulfills all of the *Home Builders* requirements. Both of these members are enrolled members of a federally recognized tribe, and also have "Title 10" experience. Both members have stated that having

seals of their branches on the Memorial will satisfy the intent of this suit. Furthermore, Defendants states that there must be "general factual allegations of injury resulting from the Defendants' conduct." *Sierra Club v. EPA,* 292 F.3d 895, 898 (D.C. Cir. 2002). The facts are clear — these members are veterans under federal law and are suffering injury due to the Defendants' refusal for their inclusion to the Memorial. Defendants is not only denigrating their active service, at a time when USPHS officers are risking their lives on deployment against the COVID pandemic, but also alleging the fact that being in these branches makes them less of a veteran. Furthermore, Defendants never included any Native American member of USPHS or NOAA for their feedback, thus purposely excluding them and adding to further injury. In sum, these actions are definitely traceable to the action of the Defendant.

        **b.**      **Interests are germane to the organization's purpose.**

As stated in the organizational standing section, The COAUSPHS's mission "is to protect and enhance the public health and safety of the United States by supporting and advancing the interests of the Commissioned Corps and its officers." COMMISSIONED OFFICERS ASSOCIATION OF THE UNITED STATES PUBLIC HEALTH SERVICE, *Mission and History*, COAUSPHS.ORG (last accessed January 18th, 2022).[10] Part of COAUSPHS's mission is, unfortunately, to constantly educate the public and lawmakers that both USPHS and NOAA officers are veterans by law. This includes, as stated above, having to engage constant advocacy to have laws passed to either correct language that excludes both the USPHS and NOAA from receiving parity with the armed forces, ranging from the federal level to the state level. Taking this into account, the instant suit is entirely relevant to the organization's mission. Since the Memorial, and its depiction of who is deserving of veteran status and who is not, is an "interest of the Commissioned Corps and its

---

[10] *https://coausphs.org/page/Mission_and_History*

officers", especially its Native American members, it completely aligns with COAUSPHS's

mission in its entirety.

The Defendant, in its complaint, also states that the connection between COAUSPHS and

NOAA is "speculative." *Defendants' Motion to Dismiss* at 11. Nothing could be further from the

truth, since Plaintiff frequently also advocates on behalf of NOAA, since the latter does not have

their own advocacy organization, and the defense of the rights of the uniformed services benefits

both the USPHS and NOAA.

> c.   **Neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.**

Even though COAUSPHS has identified two active members that can satisfy the first

element for representational standing, there are others that are not affiliated with COAUSPHS

that still have standing to file suit against the Defendant. Hence, while the two officers identified

bolster the instant suit, COAUSPHS can still establish standing without them, either by

organizational standing or representational standing. Even though individual members may bring

suit against the Defendant, COAUSPHS has expanded resources, as mentioned previously, that

an individual may not have access to.

In short, Plaintiff has alleged sufficient facts within its complaint, as well as outside its

complaint, to establish that it has both organizational and representational standing. Defendants

motion to dismiss this claim under 12(b)(1) jurisdiction grounds for lack of standing must thus

be denied.

## II.   Plaintiff has sufficiently alleged the facts required for relief to be granted under the Due Process clause of the Fifth Amendment.

Defendants have moved to dismiss this matter under 12(b)(6) on the grounds that the

complaint allegedly did not sufficiently allege facts to establish a claim on which relief may be

granted. When determining a 12(b)(6) motion, all of the facts alleged in Plaintiff's complaint

must be taken as true. *Twombly*, 550 U.S. at 557. The Court may consider the facts alleged in the complaint, as well as the exhibits and incorporated documents in the complaint, and facts which the Court can take judicial notice of. *EEOC*, 117 F.3d at 624. Plaintiff's claim must only be more than speculative and will survive Defendants' motion to dismiss even if the chances of recovery are remote. *Twombly*, 550 U.S. at 556.

Plaintiff is seeking relief under the Due Process clause of the Fifth Amendment. This clause states that: "No person shall…be deprived of life, liberty, or property without due process of law". U.S. Const. amend. V. It is uncontested that USPHS and NOAA officers were never consulted during the design of the memorial, that is that no process occurred before the alleged harm occurred. The question in controversy is whether harm occurred at all. Plaintiff seeks relief under the Due Process Clause on three grounds. First, that its members have suffered stigma and reputational harm without due process of law thanks to Defendants perpetuation of the wrongful impression that USPHS and NOAA veterans are not "real" veterans without due process of law. A procedural due process claim based on stigma or reputational harm may be sustained if the harm impacts a plaintiff's status in a tangible way. *See Trifax Corporation v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003). Here, Plaintiff, at Complaint ¶63, has clearly alleged that the exclusion of USPHS and NOAA veterans from the societal perception of who is a "real" veteran carries with it a snowball effect of the denial of the tangible societal benefits awarded to veterans. Given that Plaintiff, and its members, were not consulted before Defendants inflicted further reputational harm by furthering this perception, Plaintiff has sufficiently established that this reputational harm was inflicted without due process. *See id.* Second, as a matter of historical fact, the exclusion of the uniformed services from the bill establishing the monument was a drafting error by Congress. *See Eagle Pharmaceuticals*, 952 F.3d at 332-3.

Plaintiff has alleged that the monument was intended to remember all Native veterans, which was clearly Congress' intent when authorizing the monument, despite its drafting error. Complaint ¶¶ 38, 61. As such, as Native Veterans, USPHS and NOAA officers had both the procedural right to be consulted during the design and creation of the monument, and the substantive right to be included in the monument. As Defendants denied both rights without due process of law, Plaintiff has also established a Due Process claim on both substantive and procedural grounds upon which relief may be granted. U.S. Const. amend. V.

A.   **Plaintiff has sufficiently alleged a procedural due process claim based on reputational harm by alleging sufficient facts, alongside the facts that the Court can take judicial notice of, to substantiate that the reputational harm caused by the doubting of the full veterancy of USPHS and NOAA officers carries with it tangible impacts on their status.**

As has been previously noted, this Court is permitted to take judicial notice of matters when considering a Rule 12(b)(6) motion. *EEOC*, 117 F.3d at 624. In the D.C. Circuit, a procedural due process claim based on stigma or reputation can be sustained if the harm to reputation impacts the plaintiff's status in a tangible way. Trifax, 314 F.3d at 644.

The question of who qualifies as a "real" veteran carries with it a tangible impact beyond just reputation and stigma. As Plaintiff noted in their complaint, the continued exclusion of USPHS and NOAA veterans from the perception of being "real" veterans carries with it a snowball effect of exclusion from the societal benefits awarded to veterans. Complaint at ¶63. The private sector implicitly places a very high premium on veteran status. Veterans, for example, have a significantly lower unemployment rate than nonveterans of similar ethnic backgrounds. Sara Hylton, *supra*. This was particularly significant for Black veterans, whose unemployment rate in 2020 was 4% lower (7.5% vs. 11.5%) than their nonveteran counterparts, with Asian veterans not far behind, having a 3.6% lower unemployment rate (5.1% vs. 8.7%),

and Hispanic or Latino veterans having a 3% lower unemployment rate (7.4% vs. 10.4%). *Id.* White veterans had a .9% lower unemployment rate (6.1% vs. 7.2%). *Id.* In addition, government linked organizations like the RAND Corporation heavily promote private hiring of veterans and advertise the special skills that former service members have. *See, e.g.* Krueger et al., *What Veterans Bring to Civilian Workplaces*, RAND CORPORATION (2017). Especially for often heavily disadvantage minority groups like American Indians, a potential employer's perception of their veteran status clearly has a significant impact in their hiring prospects.

In fact, several states have moved from the implicit preferential treatment of veterans to explicit, exempting preferential hiring and promotion by civilian employers based on veteran status from state Equal Employment Opportunity laws. *See, e.g.,* Va. Code Ann. § 40.1-27.2 (2021) (Virginia); *see also* Minn. Stat. § 197.4551 (2021) (Minnesota); *see also* N.D. Cent. Code 37-19.1-05. The stigma of who is a "real" veteran, fueled by actions such as those of the NMAI, tangibly impacts these laws, and thus the employment prospects of Native veterans of the uniformed services, in two ways. First, in the actual crafting of the laws themselves, which often are explicitly limited to veterans of the armed forces. *See, e.g.,* Minn. Stat. § 197.4551 (which uses Minn. Stat. § 197.447's definition of veteran, which is limited to those who served in a branch of the armed forces).

Second, the stigma also impacts how the ambiguities in these laws may be applied. For example, Virginia includes in its definition of "veteran" someone who has a service-connected disability rating fixed by the VA. Va. Code Ann. § 2.2-2903. VA ratings are available to veterans of the uniformed services, whose service is considered to be "active duty." 38 U.S.C. § 101(21)(c), (24)(a). This means that a USPHS veteran with a disability rating would be eligible for explicitly preferential treatment in private employment (beyond just the question of implicit

treatment). *Id.*; *see* Va. Code Ann. §§ 2.2-2093, 40.1-27.2. Yet, the significant stigma associated with their service means that they are far less likely to receive such a significant employment benefit, compared to a veteran of a perceived "real" branch, like the Navy. In addition, they are often denied the wide array of other societal benefits given to veterans, such as discounts or other special grants. The almost certainty of this poorer treatment in the workplace and in the marketplace can be seen by in the analogous debacle that was the roll out of the VA's new ID card system, where the application portal did not even list the uniformed services as an option for the applicant.  Megan Hammons, *NOAA, USPHS Veterans Now Eligible for Free VA Photo ID Cards*, VETERANAID.ORG (July 10, 2018).[11] If the VA, which is specifically tasked with provided benefits to veterans of the Uniformed Services, cannot remember their status as veterans, the public is extremely unlikely to do so as well. *See* 42 U.S.C. § 213(d).

This continued ignorance as to the veteran status of USPHS officers is one reason why Plaintiff was forced to engage in a long process of advocacy in order to ensure that USPHS officers finally received a DD 214 on retirement. The DD 214 is the standard form that members of the uniformed services receive on the end of their service and is a critical document for obtaining benefits due to veterans from state and federal agencies. Yet, USPHS officers were denied use of this form, resulting in frequent struggles to obtain benefits or recognition of status, as state and federal agencies would often fail to recognize them as veterans without the document. In 2016 the Under Secretary of Defense approved issuance of DD 214's to USPHS officers on separation, but it was only towards the end of 2021 that this actually came into effect. *See* Memorandum for Acting Assistant Secretary of Health and Human Services for Health from Acting Under Secretary of Defense Paul Levine (May 24, 2016); *see also* COMMISSIONED CORPS

---

[11] https://www.veteranaid.org/blog/noaa-usphs-veterans-now-eligible-for-free-va-photo-id-cards/

OF THE U.S. PUBLIC HEALTH SERVICE, *Separations*, DCP.PSC.gov (last accessed January 22, 2022).[12]

The poor treatment of USPHS officers goes far beyond just the frequent denial of the benefits they are entitled to under statute. Nearly three quarters of the USPHS commissioned officer corps were deployed to respond to COVID, yet, despite being due priority for receipt of COVID vaccinations at the start of 2021, as members of the uniformed services, many military healthcare facilities would turn them away due to ignorance as to their status. Diamond, *supra*; *see* U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *Trump Administration Re-Establishes Ready Reserve Corps*, *supra*. Nearly 4,500 uniformed officers, serving their country on deployment to the hottest spots of a lethal pandemic, were forced to scramble, due to the widespread ignorance as to their status, to obtain protection from that pandemic. *Id.* This is a clear tangible, life threatening, impact of the continued propagation of ignorance as to the veteran status of USPHS service members.

In short, veteran status has a critical impact on the employment possibilities of members of ethnic minority groups like Native Americans, in both the private and public sector. This means that the *perception* of a private employer as to whether an applicant is a veteran or not can make the difference between continued unemployment, or stalled out job prospects, and a hiring or promotion. As the D.C. Circuit has held, a due process claim based on stigma or reputation can be sustained if the reputational harm impacts the party's status in a tangible way. *Trifax*, 314 F.3d 644. As it has been established above, the question of whether or not a veteran of the uniformed services is a "real" veteran has a critical tangible impact on their status. The stigma, pushed by actions like those of the NMAI, has resulted in statutes being explicitly written to

---

[12] https://dcp.psc.gov/ccmis/separations/DD214%20FAQs.aspx

deny them the benefits of veteran status. They are also cut off from favorable treatment in Federal employment by the Office of Personnel Management. GOVERNMENT ACCOUNTABILITY OFFICE, *Comptroller General Advisory Opinion B-204126* (1981).[13] Even when explicitly told to treat them as veterans by statute, the VA, which is supposed to provide them benefits, still managed to completely neglect them when rolling out the IDs intended to ease the accessing of benefits. Not only are they very likely to be denied the same implicit boost that veterans receive from private employers, they are also likely to be denied access to the explicit favorable treatment permitted under certain state laws. Even when deployed by their nation, they are denied lifesaving preventative measures thanks to ignorance as to their status. Together, this represents clear evidence of the tangible impact of the harm to reputation and stigma associated with the questioning of the veteran status of the uniformed services, a harm to reputation which the NMAI has contributed to. Plaintiff has thus alleged more than sufficient facts for a Fifth Amendment claim based on reputational harm. *Trifax*, 314 F.3d 644.

**B.** **Plaintiff has alleged sufficient facts to substantiate a procedural and substantial due process claim as the statutory language limiting the Memorial to members of the armed forces was a drafting error by Congress, meaning that Native USPHS and NOAA members should have been consulted when planning the Memorial and were entitled to inclusion in the Memorial.**

In order to prove that an underlying statute contains a drafting error, it must be shown that: "either as a matter of historical fact, Congress did not mean what it appears to have said, or that, as a matter of logic and statutory structure, it almost surely could not have meant it." *Eagle Pharmaceuticals,* 952 F.3d 332-3.

---

[13] *available at* https://www.gao.gov/products/b-204126

This case, and its consequences, fundamentally turns on whether Congress made a conscious decision to limit the meaning of "veteran" in the statute to only the armed forces. The problematic aspect is that the USPHS and NOAA's small size means that the "uniformed services" as a category are often barely distinct from the "armed forces" for an outside observer. The difference is a mere 7,000 additional personnel in the face of 1,330,000 total active-duty personnel. *See* Barroso, *supra*.  In effect, Congress must be actively reminded and prodded to ensure that the armed forces aren't merely used as a catch-all term for "veteran." However, when prodded, it has acted accordingly. The service of USPHS officers has since been defined as active-duty military service for V.A. benefits (42 U.S.C. § 213(d)), government retirement benefits (5 U.S.C. § 8331(13)(B)), Service Members Civil Relief (50 U.S.C. § 3911(2)(B)), guaranteed reemployment upon completion of a period of uniformed service (38 U.S.C. § 4313(a)), anti-discrimination laws (42 U.S.C. § 213(f)), and burial in national cemeteries (38 U.S.C. § 2402 and 42 U.S.C. § 213(d)). During times of war, where they have frequently been deployed, including to Iraq and Afghanistan, USPHS officers have all the same rights and privileges as the other offices of the armed forces. 42 U.S.C. § 213(a)(1). If captured, they are covered by the protections of the Geneva Convention. In fact, extension of the Convention's protections to NOAA personnel performing wartime service was the explicit reason why NOAA was made into a uniformed service!

What this means is that the question of whether or not benefits for veterans, such as Memorialization, is supposed to be limited to either the armed forces, or the uniformed services (a miniscule expansion) is not a political question. When Congress remembers the existence of that additional sliver of personnel, extends the benefits of veterancy in question to USPHS officers. *See, e.g.,* 42 U.S.C. 213 (d). Which is fitting, given that they can, and are frequently,

deployed to serve their county both at home and abroad, in both wartime and peacetime missions, with 900 USPHS officers service in Iraq and Afghanistan, and three quarters of the service being mobilized to fight COVID. Complaint Exhibit 1; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *Trump Administration Re-Establishes Ready Reserve Corps*, *supra.* The decision has been long since made, it's just a question of ensuring consistent application of the decision, something not aided by the ignorance as to the uniformed services.

As a matter of historical fact, Congress set out to create a Memorial for what was clearly intended to be *all* Native American veterans, as exemplified by the name of the Memorial, the "Native American Veterans' Memorial." *See* 108 Stat. 4067. In the face of this universal intent, and Congress clear consideration of USPHS and NOAA service members as veterans, the language of "armed forces" was a drafting error, not a deliberate political decision. As frequently happens, the Congressional personnel drafting the bill forgot that the last .5% of personnel added by the USPHS and NOAA, when "armed forces" is expanded to "uniformed services," are veterans as well. This is not a conscious choice, given that, as illustrated above, where reminded, Congress has corrected their errors. Yet, their language, speaking in terms of "veterans" makes their intent clear. *Id.* This was supposed to be a monument for all Native Americans who had proudly wore their country's uniform while serving it both at home and abroad. *Id.* This is further reinforced by the fact that Native Americans, who already disproportionately serve in the armed forces (being 1.7% of the armed forces and 1.4% of the population), serve even more disproportionately in the USPHS (6% of the USPHS vs. 1.4% of the population). USPHS, *USPHS Commissioned Corps Demographics*, *supra*; *compare* J.D. Simkins and Claire Barrett, *A 'Warrior Tradition': Why Native Americans continue fighting for the same government that tried*

27

*to wipe them out*, MILITARY TIMES (November 19, 2019).[14]  Congress specifically found that this disproportionate service was a major factor in Native Americans deserving their own national Memorial to celebrate their veterans, so it would be puzzling that it intended for the service where Native Americans are most highly represented to be excluded from this celebration and remembrance. *See* 108 Stat. 4067 at § 2.

Defendants raises, as proof that the exclusion of the USPHS and NOAA from the memorial was a conscious political decision, the fact that the language which was intended to amend Congress' drafting error stalled out in committee. *Defendants' Motion to Dismiss* at 16-7. Congressional intent for a bill is read as of the passing of the bill, not in subsequent returns to it. . *See, e.g., Cutts v.* Fowler, 692 F.2d 138, 139-40 (D.C. Cir. 1982) (determining legislative intent based on the intent at the time of the enactment of the legislation). That Senator Schatz decided to deviate from the clear historical Congressional practices of treating USPHS and NOAA officers as true veterans is not a factor in interpreting the intent, and errors, of Congress in 1994 and 2012. *Id.* If Senator Schatz's opposition to what was bipartisan language correcting this drafting error is to be seen as relevant to this matter, it is only as further evidence of the need to continue to work against societal ignorance as to the status of USPHS and NOAA personnel. Less than a year after his ignorant sudden change of opinion on the matter, three quarters of the USPHS would be deployed, as noted above, to COVID hot spots, even while being denied vaccinations by similarly ignorant healthcare facilities. See Diamond, supra; *see* U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *Trump Administration Re-Establishes Ready Reserve Corps*, *supra*.

---

[14] https://www.militarytimes.com/off-duty/military-culture/2019/11/15/a-warrior-tradition-why-native-americans-continue-fighting-for-the-same-government-that-tried-to-wipe-them-out/.

Given that Congress, as a matter of historical fact, could not have meant to exclude the uniformed services from the Memorial when the 1994 and 2012 bills were written, this means that Plaintiff clearly has alleged both a sufficient procedural and substantial due process claim. *See Eagle Pharmaceuticals*, 952 F.3d at 332-3. The Smithsonian, without due process to Native USPHS and NOAA veterans, both violated the procedural rights of the Native members of Plaintiff's organization to give their input on a memorial which was intended to celebrate *all* veterans and violated their substantial rights to have their honorable service be remembered, taught, and celebrated to the wider public. *See id.*; *see* 108 Stat. 4067; *see* Complaint Exhibit 2; *see* Defendants Motion to Dismiss at 3-4.

Plaintiff has alleged sufficient facts to establish both procedural due process claims under both the infliction of reputational harm and stigma without due process, and the denial of the right of Native USPHS and NOAA to be consulted in the creation of the monument. In addition, it has alleged sufficient facts to establish a substantive due process claim on the grounds of the denial of the entitlement of USPHS and NOAA veterans to be represented, through the emblems of their services, on the monument. Given that Plaintiff has thus alleged sufficient facts to establish a claim upon which relief may be granted, Defendants' motion to dismiss on F.R.C.P. 12(b)(6) grounds must be denied. U.S. Const. amend. V. *Twombly*, 550 U.S. at 556-7; F.R.C.P. 12(b)(6).

## III.   The political question doctrine does not apply to due process claims.

Defendants has argued that Plaintiff's claim must be dismissed, on the grounds that this Court lacks jurisdiction, pursuant to the political question doctrine. The political question doctrine is fundamentally a question about the separation of powers and seeks to remove from the judiciary the policy choices and value determinations allocated to the executive branch. *El-Shifa Pharmaceutical Industries Co. v. United States*, 607 F.3d 836, 840 (D.C. Cir. 2010). The

courts of the D.C. Circuit, both district and appellate, have consistently held that Fifth Amendment due process claims are not excluded by the political question doctrine, even when they intersect with the highest of policy concerns. *See Ralls Corp. v. Comm. On Foreign Inv.*, 758 F.3d 296, 314 (D.C. Cir. 2014); *see Al-Aulaqi v. Panetta*, 35 F.Supp.3d 56, 70 (D.D.C., 2014). This is because the interpretation and application of the Fifth Amendment is fundamentally within the domain of the judiciary. *Ralls Corp.*, 758 F.3d at 314. ("To the contrary, and as the Supreme Court recognized long ago, interpreting the provisions of the Constitution is the role the Framers entrusted to the judiciary.")

As has been established above in Issue II, Plaintiff has a established a cognizable Fifth Amendment claim, and has the rights to pursue such claims as both an organization registered in the United States and as the representative of its membership, who are American citizens. As such, under D.C. Circuit precedence, the political question doctrine does not apply here and this question is justiciable.

## <u>CONCLUSION</u>

Wherefor, for the reasons set out above, Plaintiff requests that this Court DENY Defendants' Motion to Dismiss under both Rules 12(b)(1) and 12(b)(6).

Dated:          January 24, 2022                    Respectfully submitted,


                                                    */s/DavidP.Sheldon*
                                                    David P. Sheldon (DC Bar # 446039)
                                                    Law Offices of David P. Sheldon, P.L.L.C.
                                                    100 M. St. SE, Suite 600
                                                    Washington, DC 20003
                                                    Tel: 202.546.9575
                                                    Fax: 202.546.0135
                                                    *Counsel for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Notice of Service of this Opposition to Defendants' Motion to Dismiss was electronically served on the following counsels for the Defendants on January 24, 2022:

Diana Viggiano Valdivia
U.S. Attorney's Office for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530
(202) 252-2545
Email: diana.valdivia@usdoj.gov
*Counsel for Defendants*