UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMISSIONED OFFICERS ASSOCIATION OF THE UNITED STATES PUBLIC HEALTH SERVICE, <br><br> *Plaintiff,* <br><br> v. <br><br> LONNIE G. BUNCH, III, Secretary of the Smithsonian Institution, *et al.,* <br><br> *Defendants*. | Civil Action No. 21-0853 (JDB) |

## REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*MATTHEW M. GRAVES*
United States Attorney

*BRIAN P. HUDAK*
Acting Chief, Civil Division

*DIANA V. VALDIVIA*
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia

March 25, 2022

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION…………………………………………………………………………...1

ARGUMENT……………………………………………………………………………...2

I.  PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE THE ASSOCIATION LACKS ARTICLE III STANDING……………………………………………………2

    A.   Plaintiff Fails to Establish Organizational Standing………………………………2

    B.   Plaintiff Fails to Establish Representational Standing……………………………5

II.  THE ASSOCIATION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED……………………………………………………………………………6

    A.   The Association Does Not Plausibly Allege a Substantive Due Process Claim…..7

    B.   The Association Does Not Plausibly Allege a Procedural Due Process Claim…...9

III.  PLAINTIFF'S CLAIM IS NONJUSTICIABLE UNDER THE POLITICAL QUESTION DOCTRINE…………………………………………………………………..10

CONCLUSION…………………………………………………………………………..13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abigail All. for Better Access to Developmental Drugs v. Eschenbach*,
469 F.3d 129 (D.C. Cir. 2006) ................................................................. 2, 3, 5
*Al-Aulaqi v. Obama*,
727 F. Supp. 2d 1 (D.D.C. 2010) ................................................................. 12
*Al-Aulaqi v. Panetta*,
35 F. Supp. 3d 56 (D.D.C. 2014) ........................................................... 11, 12
*Al-Tamimi v. Adelson*,
916 F.3d 1 (D.C. Cir. 2019) .................................................................. 10, 11
*Bd. of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972).................................................................................. 7
*Chamber of Commerce of U.S. v. EPA*,
642 F.3d 192 (D.C. Cir. 2011) .................................................................... 5
*CREW v. U.S. Office of Special Counsel*,
480 F. Supp. 3d 118 ............................................................................. 3, 4
*Doe v. District of Columbia*,
93 F.3d 861 (D.C. Cir. 1996) ...................................................................... 9
*Eagle Pharmaceuticals, Inc. v. Azar*,
952 F.3d 323 (D.C. Cir. 2020) .................................................................... 8
*Equal Rights Center v. Post Properties, Inc.*,
633 F.3d 1136 (D.C. Cir. 2011) ............................................................... 3, 4
*Friends of Animals v. Jewell*,
115 F. Supp. 3d 107 (D.D.C. 2015) ............................................................. 5
*Gilligan v. Morgan*,
413 U.S. 1 (1973).............................................................................. 11, 12
*Greene v. McElroy*,
360 U.S. 474 (1959).................................................................................. 9
*Hajjar-Nejad v. George Wash. Univ.*,
802 F. Supp. 2d 166 (D.D.C. 2011) ............................................................. 8
*Kelley v. District of Columbia*,
893 F. Supp. 2d 115 (D.D.C. 2012) ............................................................. 9
*Mathews v. Eldridge*,
424 U.S. 319 (1976).................................................................................. 9
*McManus v. District of Columbia*,
530 F. Supp. 2d 46 (D.D.C. 2007) ............................................................... 9
*Morrissey v. Brewer*,
408 U.S. 471 (1972).................................................................................. 9
*National Treasury Employees Union v. United States*,
101 F.3d 1423 (D.C. Cir. 1996) .................................................................. 3
*NB ex rel. Peacock v. District of Columbia*,
794 F.3d 31 (D.C. Cir. 2015) ...................................................................... 7
*PETA v. USDA* ("PETA II"),
797 F.3d 1087 (D.C. Cir. 2015) .................................................................. 2

*Ralls Corp. v. Comm. on Foreign Inv.*,
   758 F.3d 296 (D.C. Cir. 2014) ............................................................................ 11, 12
*Taylor v. Resolution Trust Corp.*,
   56 F.3d 1497 (D.C. Cir. 1995) .................................................................................... 9
*Town of Castle Rock, Colo. v. Gonzales*,
   545 U.S. 748 (2005) ................................................................................................... 7
*Trifax Corporation v. District of Columbia*,
   314 F.3d 641 (D.C. Cir. 2003) ............................................................................. 9, 10

## Statutes

10 U.S.C. § 101(a)(4) ....................................................................................................... 7

## Rules

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 1, 13
Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1, 6, 13
Fed. R. Civ. P. 25(d) ........................................................................................................ 1

## INTRODUCTION

Defendants (i) Lonnie G. Bunch, III, in his official capacity as Secretary of the Smithsonian Institution ("Smithsonian"); (ii) Cynthia Chavez Lamar,[1] in her official capacity as Director of the Smithsonian Institution's National Museum of the American Indian ("NMAI"); (iii) and the United States of America (collectively, "Defendants"), by and through undersigned counsel, respectfully submit this reply memorandum in further support of their motion to dismiss the Complaint filed by the Commissioned Officers Association of the United States Public Health Service ("Plaintiff" or the "Association") pursuant to Rules 12(b)(1) and 12(b)(6). *See* ECF No. 6 ("Defs' Motion").

As discussed in Defendants' Motion, Plaintiff in this case is a "member-based organization that supports and advocates for the [U.S. Public Health Service's] Commissioned Corps and its active duty, reserve, and retired officers." *See* ECF No. 1 ("Compl.") ¶ 7. The Association purports to bring this action under the Due Process Clause of the U.S. Constitution and asks the Court to compel Defendants to include the seals of both the U.S. Public Health Service ("USPHS") and the National Oceanic Atmospheric Administration ("NOAA") on the National Native American Veterans Memorial (the "Memorial"), despite Plaintiff's admission that the plain language of the statute creating the Memorial (the "Act") excludes USPHS and NOAA.

Defendants moved to dismiss Plaintiff's Complaint in its entirety because the Association lacks standing and fails to adequately plead a claim under the Due Process Clause. ECF No. 6-1 ("Defs' Mot.") at 12-20.[2] Moreover, Defendants urged the Court to decline Plaintiff's invitation to intervene in this controversy pursuant to the political question doctrine. *Id*. at 20-22.

---

[1]    Pursuant to Federal Rule of Civil Procedure ("Rule") 25(d), Director Cynthia Chavez Lamar is automatically substituted in her official capacity for her predecessor in office.

[2]    All citations to documents filed on the Court's docket refer to the ECF-generated pagination in the documents' headers, not the pagination (if any) at the bottom of the pages.

Plaintiff's memorandum in opposition relies heavily on outrage and little else. Each of the arguments advanced in Plaintiff's opposition, addressed in turn below, blame the Smithsonian for matters outside the agency's control, are based on a misunderstanding of relevant law, and otherwise lack merit. Accordingly, the Court should grant Defendants' motion and allow Plaintiff to address its grievance with Congress.

## ARGUMENT

## I.   PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE THE ASSOCIATION LACKS ARTICLE III STANDING

Defendants maintain that the Court should dismiss Plaintiff's claim as the Association lacks Article III standing. Defs' Mot. at 12-16. Specifically, Defendants demonstrated in their Motion that Plaintiff failed to allege facts sufficient to establish either organizational or representational standing. *Id*. In its opposition, Plaintiff argues that it has established both. *See* ECF No. 11 ("Pl's Opp.") at 17-25. Plaintiff is incorrect.

### A.   Plaintiff Fails to Establish Organizational Standing

As discussed in Defendants' opening Motion, Plaintiff fails both prongs of the D.C. Circuit's test for organizational standing. *See* Defs' Mot. at 13-15 (citing *PETA v. USDA* ("*PETA II*"), 797 F.3d 1087, 1099 (D.C. Cir. 2015), among other authorities). Nothing alleged in the Complaint supports the conclusion that the Smithsonian's actions have perceptively impaired the Association's ability to provide services. *Id.* at 14 (citing generally Plaintiff's Compl.). Rather, if anything, the Association is alleging that its mission is being compromised, *see* Compl. ¶ 7 ("Plaintiff's mission is to . . . support[] and advance[e] the interests of the USPHS"), which is insufficient under this Circuit's case law. *Id*. at 14-15 (citing *Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006). Finally, the Association

also fails to allege that it has invested resources that are not "self-inflicted" to counteract any alleged harm. *Id*. at 15.

Plaintiff counters that it meets the first prong of the D.C. Circuit test (whether the agency's action or omission to act injured the organization's interest) because the Association's "*mission is clearly in direct conflict with the Defendants' conduct.*" Pl's Opp. at 19 (emphasis added). But Plaintiff misunderstands this Circuit's case law.

The D.C. Circuit has stated that in order to establish organizational standing the organization's *activities* must be impeded; a compromised mission, alone, is insufficient. *See National Treasury Employees Union v. United States*, 101 F.3d 1423, 1429-30 (D.C. Cir. 1996); *Abigail Alliance*, 469 F.3d 129 (D.C. Cir. 2006); *Citizens for Responsibility and Ethics in Washington* ("*CREW") v. U.S. Office of Special Counsel*, 480 F. Supp. 3d 118, 127-28 (D.D.C. 2020). Put another way, direct conflict with an organization's mission is necessary, but not sufficient to establish organizational standing. *Id*. Here, there is little in Plaintiff's Complaint that even discusses the organization's activities, and nothing establishing either a direct conflict between the Smithsonian's actions and Plaintiff's mission or showing that Plaintiff's activities have been impeded. *See generally* Compl. Plaintiff thus fails the first prong of the standing test.

With respect to the second prong of the Circuit's test for organizational standing (whether the organization used its resources to counteract the harm), Plaintiff argues that it meets this prong because it spent an unspecified amount of time and money "in advocacy to correct the message being broadcast by the Memorial" by mailing forty-three letters "from June 2018 onwards." Pl's Opp. at 20-21. Despite Plaintiff's protests to the contrary, the unquantified costs of this letter writing campaign appear to be litigation and pre-litigation efforts that have been characterized by the D.C. Circuit as "efforts at increasing legal pressure" on an opposing party, which are

considered self-inflicted, and thus insufficient to establish standing.  *See Equal Rights Center v. Post Properties, Inc.*, 633 F.3d 1136, 1142 (D.C. Cir. 2011).  Additionally, Plaintiff has not shown that it has expended resources "beyond those normally carried out to advance [its] mission," a requirement to establish standing.  *CREW*, 480 F. Supp. 3d at 128.  The facts of this case call to mind the facts of *CREW* in that the Plaintiff's letter writing campaigns "fall[] neatly within the core set of activities it has long performed" and are "the devotion of resources to advocacy for the organization's preferred policy."  *Id.* at 132-33; *see also* Pl's Opp. at 12 (noting Plaintiff is "forced to constantly engage with Congress to ensure that USPHS and NOAA officers receive the benefits they are due as veterans.").  It is also unclear from the Complaint and Plaintiff's opposition whether Plaintiff's alleged injuries were "actual or imminent" at the time this suit was filed, a necessary condition to establish standing.  *Equal Rights Center*, 633 F.3d at 1141-42.

Finally, Plaintiff oddly asserts with respect to the causation element of a standing analysis that "[t]his element is not in controversy here, as Plaintiff has clearly alleged that its injury in fact stemmed from Defendants' conduct and Defendants has [*sic*] not attempted to claim otherwise." Pls' Opp. at 21-22.  This somewhat stunning assertion ignores almost the entirety of Defendants' Motion, which repeatedly argues that any alleged injury was caused not by the Smithsonian, but by Congress, when it included language in the Act creating the Memorial explicitly excluding USPHS and NOAA.  *See generally* Defs' Mot.  It is Plaintiff's burden to establish causation, and Plaintiff has failed.  For all of these reasons, and the reasons addressed in Defendants' opening Motion, the Association has thus failed to allege facts sufficient to meet this Circuit's test to establish organizational standing.

**B.      Plaintiff Fails to Establish Representational Standing**

Plaintiff's attempt to establish representational standing fares no better.  Again, Plaintiff fails to allege facts sufficient to meet several of the relevant test's prongs where injunctive relief is sought.  As Defendants demonstrated in their opening motion, Plaintiff fails to allege facts sufficient to demonstrate that: (1) at least one of its members is under threat of suffering injury in fact that is concrete and particularized; (2) any threat of injury in fact to any of its members is "fairly traceable to" an action of the Smithsonian; and (3) it seeks to protect interests that are "germane to the organization's purpose," particularly with respect to its representation of NOAA Commissioned Corps.  Defs' Mot. at 15-16.

Plaintiff first argues in its opposition that it "has identified two active members, one from USPHS and the other from NOAA" that allegedly are "willing to join as parties-in-interest to the present litigation."  Pl's Opp. at 23-24.  This vague and unsupported allegation, admittedly not even contained in Plaintiff's Complaint, *see* Pl's Opp. at 23, is insufficient to save Plaintiff's Complaint from dismissal.  Affidavits from these unidentified individual members would be required to establish representational standing.  *See Abigail Alliance*, 469 F.3d 129, 134 (D.C. Cir. 2006; *Friends of Animals v. Jewell*, 115 F. Supp. 3d 107, 119 (D.D.C. 2015) (Bates, J.) (quoting *Chamber of Commerce of U.S. v. EPA*, 642 F.3d 192, 199-200 (D.C. Cir. 2011) ("[W]hen a petitioner claims associational standing, it is not enough to aver that unidentified members have been injured.  Rather, the petitioner must specifically identify members who have suffered the requisite harm.")).  Plaintiff's unsupported protests to the contrary notwithstanding, *see* Pl's Opp. at 25, because Plaintiff has not specifically identified these members or provided affidavits from them, Plaintiff fails to establish this element of representational standing.

With respect to causation, Plaintiff argues that the alleged injury is fairly traceable to an act of the Smithsonian because "the Defendants refus[e] [USPHS and NOAA] inclusion to the Memorial."   Pl's Opp. at 24.   But, again, Plaintiff ignores the fact that Congress, not the Smithsonian, determined that the Memorial was to honor veterans of the Armed Forces, as opposed to veterans of the uniformed services. *See* Defs' Mot. at 7-8.   Plaintiff's members' exclusion from the Memorial is therefore fairly traceable not to the Smithsonian, but rather to Congress.

Finally, Plaintiff argues that it is seeking to protect interests that are germane to the organization's purpose because the Association's purpose is to "constantly educate the public and lawmakers that both USPHS and NOAA officers are veterans by law."  Pl's Opp. at 24.  While that may well be, the Act that established the Memorial in question in this litigation repeatedly makes clear that the Memorial is to honor Native Americans who have served in the Armed Forces. Defs' Mot. at 7-8.  Unless the Association's purpose is to educate the public and lawmakers that its members are in fact veterans of the Armed Forces, as opposed to the uniformed service, this lawsuit does not seek to protect an interest that is germane to the organization's purpose.

In sum, the Association fails to meet multiple prongs of the test required to establish representational standing, and its claim should therefore be dismissed.

## II.     THE ASSOCIATION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even assuming *arguendo* that Plaintiff could establish standing, the Complaint fails to allege sufficient facts to plausibly allege that the Defendants violated a constitutionally protected due process right, substantive or procedural.  Defs' Mot. at 16-20.  With respect to an alleged substantive due process violation, Plaintiff fails to identify a constitutionally protected property right to which Plaintiff has a legitimate claim.  *Id*. at 17-18.  With respect to an alleged procedural due process violation, Plaintiff fails to plausibly allege that it lacked an opportunity to be heard.

*Id.* at 18-20.   Defendants therefore sought dismissal of the Association's due process claim pursuant to Rule 12(b)(6).   *Id.* at 16-20.

In opposition, Plaintiff argues that it "seeks relief under the Due Process clause on three grounds."  Pl's Opp. at 26-27.  First, Plaintiff purports to articulate a procedural due process claim based on "reputational harm caused by the doubting of the full veterancy of USPHS and NOAA officers" which Plaintiff claims carries "tangible impacts on their status."  *Id.* at 27.  Next, Plaintiff purports to bring (as the second and third grounds) both substantive and procedural due process claims based on a theory (articulated for the first time in Plaintiff's opposition) that the Act establishing the Memorial contains a drafting error "meaning that Native USPHS and NOAA members should have been consulted when planning the Memorial and were entitled to inclusion in the Memorial."  Pl's Opp. at 31-35.  Plaintiff's arguments miss the mark on all accounts.

A.      **The Association Does Not Plausibly Allege a Substantive Due Process Claim**

Defendants explained in their Motion that Plaintiff fails to plausibly allege a substantive due process claim because Plaintiff does not identify a legitimate claim to a constitutionally protected property interest.  Defs' Mot. at 17-18 (citing *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005)).  Here, the only possible source of a due process entitlement identified in the Complaint is the Act.  *See generally* Compl.  Plaintiff claims an entitlement to "inclusion in the Memorial," Pl's Opp. at 31, under the Act because its members are "veterans."  Compl. ¶ 61.  But, as Defendants argued in their Motion, by its very provisions, the Act explicitly excludes Plaintiff from any entitlement to the Memorial as the Association's members fall outside the scope of the Act's coverage.  Def's Mot. at 17-18, Ex. A.  The Act provides its purpose is to give "[a]ll Americans the opportunity to learn of the proud and courageous tradition of service of Native Americans in the Armed Forces of the United

7

States."  *Id*.  Plaintiff is not a member of, nor does Plaintiff represent members of, the Armed

Forces of the United States.  *See* Compl. ¶¶ 17-18 ("The USPHS and the NOAA are traditionally

unarmed branches, since their missions do not inherently involve direct combat."); 10 U.S.C. §

101(a)(4), (5) (defining "armed forces" and "uniformed services.").

Plaintiff now argues for the first time in its opposition that the Act contains a drafting

error—that "Armed Forces" was, as a matter of historical fact, supposed to read "uniformed

services."  Pl's Opp. at 31-35.  But, as a threshold matter, "[i]t is axiomatic that a complaint may

not be amended by the briefs in opposition to a motion to dismiss."  *Hajjar-Nejad v. George Wash.*

*Univ.*, 802 F. Supp. 2d 166, 175 (D.D.C. 2011).  Plaintiff may not articulate for the first time in its

opposition an allegation regarding a drafting error that appears nowhere in its Complaint.

Plaintiff's allegations regarding the alleged drafting error on pages 31-35 of its opposition appear

nowhere in its Complaint.

Moreover, Plaintiff's argument lacks merit.  The plain language of the Act indicates that

the Memorial is to honor Native Americans who served in the "Armed Forces."  Defs' Mot. at 7-

8.  In order for this Court to depart from the plain meaning of a statute "there must be evidence

that Congress meant something other than what it literally said."  *Eagle Pharmaceuticals, Inc. v.*

*Azar*, 952 F.3d 323, 332-3 (D.C. Cir. 2020).  There is no such evidence here that would "clear this

high bar."  *Id*.

In fact, the only evidence Plaintiff points to is its own assertion that Congress "invariably

extends the benefits of veterancy, including memorialization" to USPHS and NOAA when

"prompted" or "reminded" to do so.  Pl's Opp. at 10, 32.  This assertion, however, is belied by the

facts of this very case, where Congress was presented with an opportunity to amend the Act to

include USPHS and NOAA and chose not to do so.  Defs' Mot. at 10.  Plaintiff suggests that it

would be inappropriate for the Court to consider the history of Congress's failure to adopt the Amendment that would have included USPHS and NOAA.  Pl's Opp. at 34.  But Plaintiff cannot have it both ways—on the one hand arguing that the Court must look to Congress's adoption of amendments to other laws for the purpose of extending preexisting veterans benefits to cover USPHS and NOA once "prompted" as evidence that this is a historical "inevitability," while simultaneously maintaining that Congress's decision to decline to amend this Act after being so "prompted" is irrelevant.  This argument is both internally inconsistent and unsupported by law.

For all of these reasons, and those articulated in Defendants' Motion, Plaintiff's substantive due process claim thus fails at the first stage of inquiry and should be dismissed.

### B.       The Association Does Not Plausibly Allege a Procedural Due Process Claim

Plaintiff also fails to adequately plead a procedural due process claim because Plaintiff has not demonstrated a lack of opportunity to be heard at a meaningful time and in a meaningful manner.  Defs' Mot. at 18-20 (citing *Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 123–24 (D.D.C. 2012); *Mathews v. Eldridge,* 424 U.S. 319, 332-33 (1976); *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 73 (D.D.C. 2007); *Doe v. District of Columbia,* 93 F.3d 861, 869-70 (D.C. Cir. 1996); *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972)).

Plaintiff first argues in its opposition, relying on *Trifax Corporation v. District of Columbia*, 314 F.3d 641 (D.C. Cir. 2003), that it can sustain a procedural due process claim because it has alleged facts sufficient to demonstrate that its members suffered "reputational harm by the doubting of the full veterancy of USPHS and NOAA officers" that carried "tangible impacts on their status."  Pl's Opp. at 27-31.  Plaintiff's reliance on *Trifax*, however, is misplaced.

*Trifax* does not stand for the proposition that harm to reputation alone is actionable under the due process clause.  Rather, *Trifax* applied the Circuit's established "reputation plus" requirement, which concerns itself with harm to reputation by the government that "'has seriously

affected, if not destroyed [their] ability to obtain employment [or contracts] in [their] field.'"
*Trifax Corp.*, 314 F.3d at 644 (quoting *Taylor v. Resolution Trust Corp.,* 56 F.3d 1497, 1506 (D.C.
Cir. 1995) (quoting *Greene v. McElroy,* 360 U.S. 474, 492 (1959))).

Unlike the "reputation plus" cases, Plaintiff here does not allege "harms approaching, in
terms of practical effect, formal exclusion from a chosen trade or profession." *Trifax Corp.*, 314
F.3d 641, 644 (D.C. Cir. 2003).  Nor do Plaintiff's allegations demonstrate that the Smithsonian,
by allegedly attacking reputation, has "achieved in substance an alteration of status that, if
accomplished through formal means, would constitute a deprivation of liberty." *Id*.  There is no
allegation in Plaintiff's Complaint that the Smithsonian has destroyed the Association's or its
members' ability to obtain employment, or otherwise deprived Plaintiff of a protected liberty
interest under the due process clause.

Plaintiff next argues in its opposition that Defendants denied Plaintiff's members "the right
of Native USPHS and NOAA to be consulted in the creation of the monument."  Pl's Opp. at 35,
*see also* Pl's Opp. at 2 (arguing that Defendants "completely fail[ed] to consult Native USPHS
and NOAA veterans.").  Plaintiff's argument, however, inexplicably ignores the fact that the
Smithsonian reviewed, considered, and responded to the Association's concerns when the
Association contacted the Smithsonian.  *See* Defs' Mot. at 9, Exs. C, D.   The fact that Plaintiff
was dissatisfied with the outcome of this consultation does not mean that Plaintiff was deprived of
due process.  Because Plaintiff fails to state a procedural due process claim upon which relief may
be granted, the Complaint should be dismissed.

### III.   PLAINTIFF'S CLAIM IS NONJUSTICIABLE UNDER THE POLITICAL QUESTION DOCTRINE

The Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction
pursuant to the political question doctrine because, as Defendants demonstrated in their Motion to

Dismiss, Plaintiff's Complaint raises a "'hands-off' political question" implicating the third and fourth prudential *Baker* factors and resolution of Plaintiff's claim would necessarily implicate as an initial matter policy determinations such as memorialization, commemoration, recognition, honor, and national collective memory that are of a kind clearly for nonjudicial discretion. Defs' Mot. at 20-23 (citing *Al-Tamimi v. Adelson*, 916 F.3d 1, 13 (D.C. Cir. 2019)). Additionally, resolution would express a lack of respect due to Congress, a coordinate branch of government that has already weighed in with a clear voice on three occasions (in a 1994 statute, a 2013 amendment, and in rejecting a proposed 2019 amendment) to address this very policy determination. *Id*.

In its opposition, Plaintiff raises only one argument in response to Defendants' political question doctrine analysis. Relying on *Ralls Corp. v. Comm. on Foreign Inv.*, 758 F.3d 296 (D.C. Cir. 2014), and *Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56 (D.D.C. 2014), Plaintiff maintains that the political question doctrine can never apply to due process claims, even when such claims "intersect with the highest of policy concerns" because "the interpretation and application of the Fifth Amendment is fundamentally within the domain of the judiciary." Pl's Opp. at 36. Again, Plaintiff misunderstands and misconstrues D.C. Circuit precedent.

*Ralls* does not support as broad a reading as Plaintiff asserts. The D.C. Circuit held that in *that particular case* the political question doctrine did not deprive it of jurisdiction to consider a due process claim. *Ralls Corp.*, 758 F.3d at 314. *Ralls* does not, however, establish a blanket rule that *all* due process claims are necessarily justiciable in all circumstances. *Id*. at 313-14. Indeed, any such rule would conflict with binding Supreme Court authority. The U.S. Supreme Court has exercised its own "power to decide," pursuant to the political question doctrine, that another branch had final authority over a Fifth Amendment due process claim. *See Gilligan v. Morgan*, 413 U.S.

1, 3-4 (1973) (declining to rule on allegations that the Ohio National Guard violated the free speech and due process rights of student Vietnam War protesters by using violence to stop a demonstration at Kent State University). Notably, in *Gilligan*, the Court stated that Congress's power under Article I, Section 8 "to prescribe and regulate the training and weaponry of the National Guard . . . clearly precludes any form of judicial regulation of the same matters," even though the claims Plaintiff raised in that case included a due process claim. *Id*. at 68; *see also id*. at 6-12.

Additionally, the facts of both the *Ralls* and *Al-Aulaqi* cases are very different from the facts of this case. *Ralls* involved a Presidential Order requiring a company to divest itself of four wind farming companies in the name of national security, *Ralls* Corp., 758 F.3d at 301-2. There, the D.C. Circuit determined that because *Ralls* did not request that the Court "exercise judgment in the realm of foreign policy and national security," but instead asked the Court to decide whether it was entitled to notice of and access to evidence, the claim was justiciable. *Ralls Corp.*, 758 F.3d 296, 314 (D.C. Cir. 2014). Here, in contrast, Plaintiff concedes that it is asking this Court to exercise judgment in the hands-off policy area of determining "who is deserving of veteran status and who is not." Pl's Opp. at 24.

In *Al-Aulaqi*, when holding the political question doctrine inapplicable the District Court seemed motivated by the nature of the due process claim at stake—plaintiffs alleged that U.S. officials "intentionally targeted and killed U.S. citizens abroad without due process," an essential death sentence that the Court found implicated "the most fundamental liberty and property rights of this country's citizenry." *Al-Aulaqi*, 35 F. Supp. 3d at 70. No such death sentence is implicated in the instant case. Moreover, the District Court noted in footnote 21 that its decision on the political question issue was inconsistent with this Court's decision in *Al-Aulaqi v. Obama*, 727 F.

Supp. 2d 1 (D.D.C. 2010).  Plaintiff's arguments with respect to the political question doctrine are thus unavailing.

## CONCLUSION

For all of the above reasons and all of the reasons articulated in Defendants' Motion to Dismiss, Plaintiff's Complaint should be dismissed pursuant to Rules 12(b)(1) and Rule 12(b)(6).

Dated:  March 25, 2022
      Washington, D.C           Respectfully submitted,

                              MATTHEW M. GRAVES, D.C. Bar #481052
                              United States Attorney

                              BRIAN P. HUDAK
                              Acting Chief, Civil Division

               By:      */s/ Diana V. Valdivia*
                              DIANA V. VALDIVIA, D.C. Bar #1006628
                              Assistant United States Attorney
                              U.S. Attorney's Office, Civil Division
                              555 Fourth Street, N.W.
                              Washington, D.C. 20530
                              Tel: (202) 252-2554
                              diana.valdivia@usdoj.gov

                              *Counsel for Defendants*