### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **COMMISSIONED OFFICERS ASSOCIATION OF THE UNITED STATES PUBLIC HEALTH SERVICE,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **LONNIE G. BUNCH, III, Secretary of the Smithsonian Institution, et al.,** <br><br> **Defendants.** | **Civil Action No. 21-853 (JDB)** |

### <u>MEMORANDUM OPINION</u>

The Commissioned Officers Association of the United States Public Health Service ("COAUSPHS" or "the Association") has sued the Secretary of the Smithsonian Institution, the Director of the National Museum of the American Indian, and the United States of America to challenge the design of the National Native American Veterans' Memorial ("the Memorial").[1] Before the Court is the government's motion to dismiss the Association's complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.  For the reasons set forth below, the Court agrees with the government that the Association does not have standing to sue.  Accordingly, the Court will grant the government's motion to dismiss for lack of subject-matter jurisdiction.

### <u>Background</u>

In 1994, Congress authorized the National Museum of the American Indian ("NMAI"), a component museum of the Smithsonian Institution, "to construct and maintain a National Native

---

[1] Plaintiff originally named former Director of the National Museum of the American Indian Kevin Gover as a defendant, but Gover ceased to hold that position in January 2021.  Accordingly, his successor, Cynthia Chavez Lamar, has been substituted as a defendant pursuant to Federal Rule of Civil Procedure Rule 25(d).

American Veterans' Memorial" in recognition of Native Americans' "long, proud and distinguished tradition of service in the Armed Forces of the United States."  Native American Veterans' Memorial Establishment Act of 1994, Pub. L. No. 103-384, §§ 3(a), 2(1), 108 Stat. 4067, 4067–68 ("the Act").  After Congress amended the law in 2013 to give the NMAI greater flexibility in choosing a site for the Memorial, see Native American Veterans' Memorial Amendments Act of 2013, Pub. L. No. 113-70, 127 Stat. 1208, the NMAI began consulting tribal leaders and Native American veterans "to discuss the Memorial's design and to solicit tribal opinion to guide the meaning, purpose and design of the Memorial," Gov't Ex. C [ECF No. 6-4] at 1 (letter from then-Director of NMAI describing consultations).  This process ultimately included "thirty-five regional and community consultations, which consisted of 1,200 people across various tribes."  Compl. [ECF No. 1] ¶ 37; see generally Compl. Encl. 2 [ECF No. 1] (report summarizing NMAI's consultation process).[2]

In 2018, the Smithsonian approved a design for the Memorial featuring the seals of the U.S. Army, Navy, Marine Corps, Air Force, and Coast Guard mounted on stone slabs and surrounding a large, vertical stainless steel ring.  Compl. ¶ 45; Compl. Encl. 4 [ECF No. 1] (photograph of the memorial); Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. to Dismiss [ECF No. 11] ("Pl.'s Opp'n") at 8.  Situated in a garden on the grounds of the NMAI in Washington, D.C., one block off of the National Mall and three blocks south of this Court's home at the E. Barrett Prettyman Courthouse, the Memorial opened to the public on November 11, 2020.  See generally National Native American Veterans Memorial, National Museum of the American Indian, https://americanindian.si.edu/visit/washington/nnavm (last visited Mar. 29, 2022).

_____

[2] Plaintiff's complaint and its four enclosures were filed as one document, found on the docket at ECF No. 1.  Nonetheless, the Court will cite the complaint and each enclosure separately.

But the chosen design recognized only veterans of the "armed forces" and omitted any mention of the other two "uniformed services": the United States Public Health Service ("USPHS") Commissioned Corps and the National Oceanic and Atmospheric Administration Commissioned Officer Corps ("NOAA Corps").  See 10 U.S.C. § 101(a)(4)–(5) (defining the terms "armed forces" and "uniformed services").   Once the design was announced, the Association, an "organization that supports and advocates for the [US]PHS Commissioned Corps" and "at times, advocates on behalf" of the NOAA Corps, Compl. ¶¶ 7–8, urged the Smithsonian to include the seals of those services on the Memorial.  See, e.g., Pl.'s Opp'n at 14–15.  But to no avail: in September 2019, then-NMAI Director Kevin Gover decided to move forward with the armed-forces-only design.  See Gov't Ex. C at 1–2.  In a 2019 letter to COAUSPHS Executive Director James Currie, Gover explained that the 1994 Act's many references to the "armed forces" suggest that the Memorial should commemorate only military veterans, id. at 1, and he added that, although the many Native American groups with whom NMAI staff consulted "appreciate and respect the contribution of the Native Commissioned Corps members," those groups agreed that "Congress [did not] intend[] this Memorial to provide recognition beyond the armed forces," id. at 2; see also Gov't Ex. D [ECF No. 6-5] (2018 letter from Gover taking the same position).

On March 30, 2021, the Association brought the present lawsuit against the Secretary of the Smithsonian Institution, the Director of the NMAI, and the United States of America, seeking an injunction "[c]ompel[ling]the Defendants to take measures sufficient to ensure Defendants include both USPHS and NOAA seals on the Memorial."  Compl. at 10.  The Association contends that, because officers in the USPHS Commissioned Corps and the NOAA Corps "are 'veterans' under federal law," they have a "legitimate claim of entitlement" to recognition in the Memorial. Compl. ¶ 61; see also 42 U.S.C. § 213(d) (providing that service in the UPSHS Commissioned Corps "shall be deemed to be active military service . . . for the purposes of all laws administered

by the Secretary of Veterans Affairs").  Accordingly, the Association argues that the services'
exclusion from the Memorial violates the Fifth Amendment's Due Process Clause in two ways.
First, it contends that the NMAI's failure to include USPHS Commissioned Corps and NOAA
Corps veterans in the Memorial's design process violated their procedural due process rights by
denying them notice and an opportunity to be heard.  Compl. ¶¶ 66–68.  The Association also
argues that the exclusion from the Memorial itself, which the Association alleges damages the
officers' reputations by "continuing the stigma that USPHS and NOAA retirees and former
members are not veterans," violates substantive due process.  Id. ¶¶ 62–64.

The government now moves to dismiss the Association's complaint for lack of subject-
matter jurisdiction and for failure to state a claim upon which relief can be granted.  See generally
Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss [ECF No. 6-1] ("Gov't Mot."); see also Reply
in Further Supp. of Gov't Mot. [ECF No. 14] ("Gov't Reply").  The government claims that the
Court lacks jurisdiction for two reasons: the Association lacks standing, id. at 7–11; Gov't Reply
at 2–6, and the present suit presents a nonjusticiable political question, Gov't Mot. at 15–17; Gov't
Reply at 10–13.  The government also argues that the Association has failed to plausibly state a
claim for violations of the Due Process Clause.  Gov't Mot. at 11–15; Gov't Reply at 6–10.
Briefing is now complete, and the motion is ripe for decision.  For the reasons set forth below, the
Court will grant the government's motion to dismiss on the ground that the Association lacks
standing.

## Analysis

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized
by Constitution and statute. . . ."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377
(1994); accord Attias v. Carefirst, Inc., 865 F.3d 620, 624 (D.C. Cir. 2017) ("When a court lacks
subject-matter jurisdiction, it has no authority to address the dispute presented.").  "Article III of

the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies,'" and "'[o]ne element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)).  As a consequence, if a plaintiff in federal court does not have standing, the court must dismiss the case for lack of subject-matter jurisdiction.

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" that it possesses standing.  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  Accordingly, standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Kareem v. Haspel, 986 F.3d 859, 865 (D.C. Cir. 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1991)).  "At the motion to dismiss stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice' to establish standing." Am. Clinical Lab'y Ass'n v. Azar, 931 F.3d 1195, 1203 (D.C. Cir. 2019) (quoting Lujan, 504 U.S. at 561)).  But by the same token, "threadbare recitals of the elements of standing, supported by mere conclusory statements, do not suffice," and courts may neither "assume the truth of legal conclusions" nor "accept inferences that are unsupported by the facts set out in the complaint." Kareem, 986 F.3d at 865–66 (cleaned up; citations omitted); accord Gulf Coast Mar. Supply, Inc. v. United States, 867 F.3d 123, 128 (D.C. Cir. 2017) ("A motion to dismiss . . . obligates us to disregard any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint.").  Finally, "the court may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim," Kiakombua v. Wolf, 498 F. Supp. 3d 1, 22 (D.D.C. 2020), so "[a]ny declarations or affidavits submitted during briefing are thus fair game for a court deciding a jurisdictional motion," Breeze v. Kabila Inc., Civ. A. No. 21-753 (JDB), 2021 WL 5918678, at *4 (D.D.C. Dec. 15, 2021).

These principles apply both to individual plaintiffs and to organizations that seek to sue in federal court.  Organizational plaintiffs have two avenues for establishing standing: "[t]hey can sue either on their own behalf ('organizational standing') or on behalf of their members ('representational standing')."  Citizens for Resp. & Ethics in Wash. v. U.S. Off. of Special Couns., 480 F. Supp. 3d 118, 126–27 (D.D.C. 2020) ("CREW").  In this case, the Association claims standing under both theories; the government contends that the Association has standing under neither.  The Court will address these two theories in turn.

## I.   **Representational Standing**

To establish representational standing (also called "associational standing"), an organization must show that "(1) at least one of its members would have standing to sue in [his or her] own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit."  Food & Water Watch v. FERC, No. 20-1132, 2022 WL 727037, at *2 (D.C. Cir. Mar. 11, 2022) (quoting Sierra Club v. EPA, 292 F.3d 895, 898 (D.C. Cir. 2002)); accord, e.g., Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 181 (2000).  The latter two elements are satisfied in this case.  The government does not contest the third element, see Gov't Mot. at 11, and germaneness is an "undemanding" standard that requires "mere pertinence between litigation subject and organizational purpose," NAACP v. Trump, 298 F. Supp. 3d 209, 226 (D.D.C. 2018) (quoting Humane Soc'y of the U.S. v. Hodel, 840 F.2d 45, 58 (D.C. Cir. 1988)).  The Association characterizes its mission as "supporting and advancing the interests of the USPHS," Compl. ¶ 7, including by "educat[ing] the public and lawmakers that both USPHS and NOAA officers are veterans by law," Pl.'s Opp'n at 18.  Accepting those allegations as true, the Court is satisfied that the present suit challenging the

exclusion of the USPHS Commissioned Corps and NOAA Corps from a veterans memorial is pertinent to the Association's mission.

The real question, then, is whether the Association has shown that one of its members would have standing to sue in his or her own right.  See Nat'l Council for Adoption v. Blinken, 4 F.4th 106, 111 (D.C. Cir. 2021) ("An association has standing if at least one member can establish injury, causation, and redressability.").  It has not.  The Association's complaint makes no mention of any individual member, nor has the Association submitted any affidavits attesting to injuries suffered by its members.  Instead, it conclusorily states in its opposition brief that "[t]here are former and retired COAUSPHS members that could sue Defendants under their own right," and that it "has identified two active members . . . that are willing to join as parties-in-interest to the present litigation." Pl.'s Opp'n at 17.  According to the Association, these unnamed members "are veterans under federal law and are suffering injury due to the Defendants' refusal for their inclusion to the Memorial." Id. at 18; see also id. at 17–18 (stating that the members "are enrolled members of a federally recognized tribe," "have 'Title 10' experience," and "have stated that having seals of their branches on the Memorial will satisfy the intent of this suit.").[3]

This showing is insufficient.  "When a [plaintiff] claims associational standing, it is not enough to aver that unidentified members have been injured. Rather, the [plaintiff] must specifically 'identify members who have suffered the requisite harm.'"  Chamber of Com. of U.S.

---

[3] Plaintiff appears to suggest that United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951), prevents these members from submitting an affidavit or from joining the present suit.  See Pl.'s Opp'n at 17.  This is not correct.  In Touhy, the Supreme Court upheld a Department of Justice regulation ordering employees not to disclose agency records in response to a subpoena duces tecum unless expressly authorized to do so.  See 340 U.S. at 463 n.1, 468–70.  Agencies now often have "Touhy regulations," which "determin[e] who within the agency must decide how to respond to a federal court subpoena," Watts v. SEC, 482 F.3d 501, 508–09 (D.C. Cir. 2007); cf. 28 C.F.R. §§ 16.21–16.29 (the Department of Justice's Touhy regulations), and litigants seeking agency materials must sometimes submit "Touhy requests" in addition to subpoenas duces tecum.  Plaintiff has not cited (nor has the Court been able to locate) any Touhy regulations promulgated by either the USPHS Commissioned Corps or the NOAA Corps, nor is there any indication that such regulations would prevent an officer in either service from voluntarily submitting an affidavit or joining a lawsuit.

v. EPA, 642 F.3d 192, 199 (D.C. Cir. 2011) (internal citation omitted) (quoting Summers v. Earth Island Inst., 555 U.S. 488, 499 (2009)).  In Summers, the Supreme Court refused to "accept[] the organization's self-description of the activities of its members" and instead noted the importance of individual affidavits in "assur[ing] itself" of an organizational plaintiff's standing.  555 U.S. at 497–99.  Even if it is "possible—perhaps even likely—that one individual will meet all of [the standing] criteria, that speculation does not suffice."  Id. at 499.  And in Twin Rivers Paper Co. LLC v. SEC, 934 F.3d 607 (D.C. Cir. 2019), the D.C. Circuit held that an organization failed to establish standing when it had "failed to submit any member affidavits with its opening brief," did not "identify any individual members" in its own affidavit, and "fail[ed] to identify individual members" in its brief.  934 F.3d at 613.  Although the organization represented that it had members who would be harmed by the challenged rule, "a [plaintiff] must support its standing 'by affidavit or other evidence,'" the D.C. Circuit held, "and briefs 'are not evidence.'"  Id. (internal citation omitted) (quoting Sierra Club, 292 F.3d at 899, 901).

This case is essentially identical to Twin Rivers: the Association submitted no affidavits, made only general allegations of member injury in its opposition brief, and failed to specifically identify any individual member suffering harm.  Thus, as in Twin Rivers, the Association has failed to provide any evidence supporting its assertion that one of its members could demonstrate a satisfactory injury-in-fact.  See also Friends of Animals v. Jewell, 115 F. Supp. 3d 107, 119 (D.D.C. 2015) (holding that an organization lacked representational standing when "neither its complaint nor its declaration identifie[d] any member" and it made the "[v]ague factual allegation[]" that "its members recreate near 'some' of the tortoise species in question"), aff'd on other grounds, 828 F.3d 989 (D.C. Cir. 2016).  Regardless of the Association's general claims that USPHS Commissioned Corps and NOAA Corps officers suffer injury from the perception that

they are not real veterans, e.g., Pl.'s Opp'n at 3–4, 7, 21–25, the Association simply has not made the requisite showing that at least one of its members would have standing to bring this suit.[4]

## II.    **Organizational Standing**

Having concluded that the Association may not sue on behalf of its members, the Court now considers the Association's standing to sue in its own right.  "[L]ike an individual plaintiff," an organization must "show actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision."  Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 919 (D.C. Cir. 2015) (quoting Equal Rts. Ctr. v. Post Props., Inc., 633 F.3d 1136, 1138 (D.C. Cir. 2011)).  In this case (as in many cases), "the key issue is whether [the organization] has suffered a 'concrete and demonstrable injury to [its] activities.'"  People for the Ethical Treatment of Animals v. U.S. Dep't of Agric., 797 F.3d 1087, 1093 (D.C. Cir. 2015) ("PETA") (second alteration in original) (quoting Equal Rts. Ctr., 633 F.3d at 1138).

Courts in this Circuit use a "two-part inquiry" for assessing whether an organization has sufficiently alleged injury-in-fact, asking "first, whether the agency's action or omission to act injured the organization's interest and, second, whether the organization used its resources to counteract that harm."  Food & Water Watch, 808 F.3d at 919 (cleaned up) (quoting PETA, 797 F.3d at 1094).  Both prongs must be satisfied—if an organization fails one part of the inquiry, a court need not address the other.  See id.  For the reasons explained below, the Court concludes that the Association fails at step one: it has not adequately alleged that defendants' conduct injured its interest.[5]

---

[4] Since the Court can resolve the present motion on this limited ground, it need not address the other elements of the standing inquiry.  The Court's silence on those questions should not be taken to imply that, had the Association proffered a member affidavit, it would have satisfied the requirements for representational standing.

[5] Accordingly, the Court takes no position on whether the Association could have satisfied traceability or redressability.

To state a sufficient injury to its interest, an organization must allege that "the defendant's conduct perceptibly impaired the organization's ability to provide services." Food & Water Watch, 808 F.3d at 919 (quoting Turlock Irrigation Dist. v. FERC, 786 F.3d 18, 24 (D.C. Cir. 2015)). This could include showing that the challenged conduct "cause[d] an 'inhibition of [the organization's] daily operations," id. (second alteration in original) (quoting PETA, 797 F.3d at 1094), or that "discrete programmatic concerns are being directly and adversely affected by the defendant's actions," Am. Legal Found. v. FCC, 808 F.2d 84, 92 (D.C. Cir. 1987). As Judge Boasberg has commented, "[a]rticulations of this rule abound, but they all focus on the same point: the organization's tasks must be impeded." Ctr. for Responsible Sci. v. Gottlieb, 346 F. Supp. 3d 29, 37 (D.D.C. 2018), aff'd, 809 F. App'x 10 (D.C. Cir. 2020). By contrast, "[c]onflict between a defendant's conduct and an organization's mission is alone insufficient to establish Article III standing." Ctr. for L. & Educ. v. Dep't of Educ., 396 F.3d 1152, 1161 (D.C. Cir. 2005) (quoting Nat'l Treasury Emps. Union v. United States, 101 F.3d 1423, 1429 (D.C. Cir. 1996)). "Frustration of an organization's objectives is the type of abstract concern that does not impart standing," id. at 1161–62 (quoting Nat'l Treasury, 101 F.3d at 1429), nor is "a mere setback to [the organization's] abstract social interests . . . sufficient," PETA, 797 F.3d at 1094 (quoting Equal Rts. Ctr., 633 F.3d at 1138).

The Association's principal argument on this point is based on two D.C. Circuit cases: Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach, 469 F.3d 129 (D.C. Cir. 2006), and National Treasury Employees Union v. United States, 101 F.3d 1423 (D.C. Cir. 1996). These cases, the Association asserts, held that "there is injury where there is 'direct conflict between the Defendants' conduct and the organization's mission." Pl.'s Opp'n at 13 (quoting Abigail All., 469 F.3d at 133, and attributing proposition to Nat'l Treasury, 101 F.3d at 1430). And since the Association's "mission is clearly in direct conflict with Defendants' conduct and

has been harmed by said conduct," the Association argues that it has adequately alleged injury to its interests.  Id. at 13–14.

Unfortunately, the Association fundamentally misreads both cases.  National Treasury and Abigail Alliance are clear that "direct conflict" is not sufficient on its own to demonstrate injury to the organization's interests—instead the defendant's conduct must have negatively impacted the organization's activities.  The D.C. Circuit was quite clear on this point in National Treasury:

> [C]onflict between a defendant's conduct and an organization's mission is alone insufficient to establish Article III standing. . . . [I]n those cases where an organization alleges that a defendant's conduct has made the organization's <u>activities</u> more difficult, the presence of a direct conflict between the defendant's conduct and the organization's <u>mission</u> is necessary—though not alone sufficient— to establish standing.

Nat'l Treasury, 101 F.3d at 1429–30.  Then, citing National Treasury, the Abigail Alliance court reaffirmed the distinction "between organizations that allege that their activities have been impeded [and] those that merely allege that their mission has been compromised."  469 F.3d at 133.  The court discussed the "direct conflict" requirement only while rejecting the government's argument that the court's rule would permit any public interest organization to challenge a regulation it does not like.  Id.  Not so, the court said, because "[f]or standing to be based upon injury to the organization's activities there must still be a direct conflict between the defendant's conduct and the organization's mission."  Id. (emphasis added) (citing Nat'l Treasury, 101 F.3d at 1430).  In context, then, it is clear that Abigail Alliance did nothing to alter the requirement that an organization show impairment of its activities.  Id. ("[O]ur holding does not relax the standing requirements.").  Instead, it merely reiterated the rule that direct conflict between a challenged action and the organization's mission is a necessary but not sufficient element of organizational standing.  Id.; see also Ctr. for Responsible Sci., 346 F. Supp. 3d at 37 ("A necessary aspect of [the injury] requirement is that there be a 'direct conflict between the defendant's conduct and the

organization's mission.'  Alone, however, this conflict is insufficient." (quoting Abigail All., 469 F.3d at 133)).

Rather, the key question is whether "a defendant's conduct has made the organization's activities more difficult," Nat'l Treasury, 101 F.3d at 1430, and "the Court's task is to differentiate between 'organizations that allege that their activities have been impeded'—which suffices for standing purposes—'from those that merely allege that their mission has been compromised'— which does not," CREW, 480 F. Supp. 3d at 127–28 (quoting Abigail All., 469 F.3d at 133). Indeed, in Food & Water Watch, the D.C. Circuit rejected the precise argument now made by the Association.  See 808 F.3d at 921 n.9 ("The concurrence contends that FWW has met the first prong of the organizational standing analysis because . . . the complaint has alleged a 'direct conflict' between the [challenged program] and FWW's mission. . . . However, even if FWW were to allege a 'direct conflict,' . . . [it] would still need to allege an injury to its interest." (citing Nat'l Treasury, 101 F.3d at 1430)).  Thus, the Court must reject the Association's argument that the harm to its mission is sufficient to state an injury to its interests.  To do otherwise would be to obliterate the longstanding distinction between a "concrete and demonstrable injury to the organization's activities" and "a setback to the organization's abstract social interests."  Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982).

The Association does also appear to argue that defendants' conduct impairs its activities in addition to compromising its mission.  By omitting the USPHS Commissioned Corps and NOAA Corps from the Memorial, the theory goes, defendants are "active[ly] spreading . . . wrongful impressions as to the veteran status of USPHS and NOAA."  Pl.'s Opp'n at 15.  And since a significant component of the Association's mission is to "educate the public and lawmakers that both USPHS and NOAA officers are veterans by law," Pl.'s Opp'n at 18, defendants' implicit dissemination of this harmful message "clearly undermines 'the organization's ability to perform

its fundamental programmatic services,'" Pl.'s Opp'n at 13–14 (quoting <u>CREW</u>, 480 F. Supp. 3d at 131).

This theory fails as well. Judge Boasberg heard and rejected an eerily similar argument in <u>CREW</u>. There, the plaintiff organization challenged the Office of Special Counsel's failure to file a complaint with the Merit Systems Protection Board against a high-profile presidential advisor for repeatedly violating the Hatch Act. 480 F. Supp. 3d at 124–26. CREW contended that, by not taking action against the advisor, OSC was sending "the message that there are no consequences for violating the statute," and that this message conflicted with CREW's mission. <u>Id.</u> at 129 (cleaned up). Judge Boasberg rejected this argument easily: "Merely stating that the non-deterrent effect of such action—which Plaintiff has not even set out in its Complaint—is at odds with its mission of 'promoting governmental integrity and accountability' is insufficient to establish standing." <u>Id.</u> (citing <u>Abigail All.</u>, 469 F.3d at 133). The Association's claim here is similar: the Memorial will hamper its advocacy efforts by sending the message that USPHS Commissioned Corps and NOAA Corps officers are not real veterans. Just as this claim failed in <u>CREW</u>, it fails in this case also.

Moreover, the D.C. Circuit has repeatedly held that an organization cannot show injury-in-fact just by alleging that agency action will make future lobbying or educational efforts more difficult. In <u>Food & Water Watch</u>, the court held that an organization dedicated "to educat[ing] the public about food systems that guarantee safe, wholesome food produced in a sustainable manner," 808 F.3d at 920 (citation omitted), lacked standing to challenge a Department of Agriculture rule modifying the agency's poultry slaughterhouse inspections. <u>See id.</u> at 911–912, 920–21. The D.C. Circuit reached this conclusion even though the new rule would force the organization to "increas[e] its efforts to educate members of the public" about the inadequate inspection regime and to "increase the amount of resources that it spends encouraging its

members . . . to purchase poultry at farmers' markets or direct from producers."  Id. at 920 (citations omitted).  Since the new rule neither "limit[ed] its ability to seek redress for a violation of law" nor "restrict[ed] the flow of information that FWW uses to educate its members," the organization had not shown that its "organizational activities have been perceptibly impaired in any way."  Id. at 921.  Instead, it had alleged "nothing more than an abstract injury to its interests that is insufficient to support standing."  Id.

And in Center for Law & Education, the organizational plaintiff alleged that the challenged rules would, among other things, "force[] them to address advocacy issues on an expensive State-by-State basis."  396 F.3d at 1158.  Without questioning this paradigmatic pocketbook injury, id. at 1161 ("The organizations allege that the Federal rules force them to change their lobbying strategies [to] a more costly form of lobbying."), the D.C. Circuit held that the plaintiff lacked standing since "[h]ere, the only 'service' impaired is pure issue-advocacy," id. at 1162.  "This Court has not found standing," it added, "when the only 'injury' arises from the effect of the regulations on the organizations' lobbying activities (as opposed to the effect on non-lobbying activities)," id. at 1161—such an injury, the court suggested, is equivalent to mere "[f]rustration of an organization's objectives," id. (quoting Nat'l Treasury, 101 F.3d at 1429).

In short, the Association needed to show how the Memorial concretely impairs its on-the-ground, non-lobbying operations.  See CREW, 480 F. Supp. 3d at 127 ("[T]he challenged activity . . . must "'inhibit[]' the organization's 'daily operations' in a concrete way." (citation omitted; second alteration in original)).  It has not done so.  And since the Association has failed to allege injury, it has not carried its burden to demonstrate the existence of an Article III case or controversy.  This Court is thus without jurisdiction and must grant the government's motion to dismiss.

*     *     *     *     *

As is hopefully clear, nothing in this opinion should be taken to denigrate the value of the USPHS Commissioned Corps or NOAA Corps, nor does the Court question their officers' sacrifice or patriotism.  Indeed, the Court fully acknowledges the Association's disappointment and even indignation regarding the exclusion of those services from the Memorial.  But neither disappointment nor indignation are enough to create a case or controversy.  Because the Association lacks standing to sue either on its own behalf or on behalf of its members, the Court will grant the government's motion to dismiss for lack of subject-matter jurisdiction.  An Order to that effect will issue on this date.

/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>March 30, 2022</u>